BEECHER *v.* COMMON COUNCIL OF DETROIT.

DOMICILE—INTENTION OF CHANGING—EVIDENCE—TAXATION.

> A finding that a person intended to fix his domicile in the
> city in which he was taxed for personal property is sus-
> tained by evidence that he had actually resided therein for
> four years, and had built an expensive house, in the construc-
> tion of which his wife made suggestions as to its internal
> arrangements, with the evident view of making it a home,
> and that he owns no other house, although he testifies that he
> came to such city for a temporary purpose, as administrator of
> his father's estate therein located, that he had no intention of
> changing his residence, that he returned twice a year to his
> former residence to vote, and that he described himself in
> insurance policies as residing at such place.

*Certiorari* to Wayne; Frazer, J.  Submitted June 8,
1897.  Decided September 14, 1897.

*Mandamus* by George L. Beecher to compel the com-
mon council of the city of Detroit to vacate an assessment
for taxes on personal property.  From an order denying
the writ, relator brings *certiorari*.  Affirmed.

*Alfred Russell*, for relator.

*C. D. Joslyn*, for respondent.

LONG, C. J.  In 1896 the board of assessors of Detroit
assessed George L. Beecher for taxation upon personal
property valued at $304,000.  He appealed to the board
of review, and thence to the common council, claiming
that he was not a resident of the city of Detroit, but that
he is a resident of Negaunee, Mich., and hence the assess-
ment of his personal property in Detroit was unauthorized.
The board and the common council refusing to relieve him
from this assessment, he filed a petition in the Wayne
circuit court for *mandamus* to compel the respondent to

correct the assessment against him by striking therefrom said assessment. The court held that the answer raised an issue of fact as to where the relator resided, and directed such issue to be heard before a jury. A jury was called, and testimony taken. Upon this testimony, the jury found that the relator resided in the city of Detroit. The court confirmed this finding, and denied relator's petition. The case comes into this court upon a writ of *certiorari*.

It is the contention of the relator that there is no testimony in the case which warranted such a finding by the court or jury. No testimony was presented by the respondent. It appears by the testimony introduced by the relator that in 1882 he went to Negaunee, to take charge of the property and business of his father there. He continued in this employment, living in a house owned by his father, until the year 1892, when his father died, leaving a large estate in the city of Detroit; and, as he was one of the administrators of his father's estate, he came to Detroit that year, with his wife and children. Two years after coming to Detroit, he built a house costing $45,000 on a lot purchased for $35,000. This house was completed, so that he moved into it with his family, in January, 1894, and still continues to live in it. Relator claimed that his residence is at Negaunee. He gave testimony tending to show that from the time he went to Negaunee till the present he has voted there; that at the time of leaving Negaunee he stated publicly that he had no intention of changing his residence to Detroit, and has returned twice a year to Negaunee to vote; that, after coming to Detroit, he took out two policies of life insurance, in both of which he is described as of Negaunee; that he offered his house in Detroit for sale, saying his health was such that he should not leave Negaunee, and had never intended to leave it, and was only temporarily in Detroit; that he should return to Negaunee as soon as the estate of his father was closed up.

There can be no question but that a taxpayer may elect

his residence as a matter of right. Neither can there be any question that temporary abode in a place does not establish a residence there. As was said in *Warren* v. *Board of Registration*, 72 Mich. 400:

"There can never, in the eye of the law, be more than one domicile of citizenship, and that continues, in the case of a citizen, till he himself renounces it absolutely, and takes up another in its stead; and such a domicile is not lost by absence in the State or out of the State, whether within or without the United States."

But how is the question to be determined whether one place has been abandoned and another domicile has been fixed? Every person must have a domicile somewhere. The domicile is acquired by the combination of residence and the intention to reside in a given place, and can be acquired in no other way. *Inhabitants of Phillips* v. *Inhabitants of Kingfield*, 19 Me. 375 (36 Am. Dec. 760). The residence which goes to constitute domicile need not be long in point of time. If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile. *Cadwalader* v. *Howell*, 18 N. J. Law, 138. The rule is laid down by Mr. Justice Cooley in his work on Taxation (2d Ed., p. 369), as follows:

"It is a maxim that every man must have a domicile somewhere, and also that he can have but one. Of course, it follows that his existing domicile continues until he acquires another, and, *vice versa*, by acquiring a new domicile he relinquishes his former one. From this view it is manifest that very slight circumstances must often decide the question. It depends upon the preponderance of evidence in favor of two or more places; and it may often occur that the evidence of facts tending to establish the domicile in one place would be entirely conclusive were it not for the existence of facts and circumstances of a still more conclusive and decisive character which fix it beyond question in another. So, on the contrary, very slight circumstances may fix one's domicile, if not controlled by more conclusive facts fixing it in another place."

As Jacobs in his Law of Domicile (section 378) states it:

"A removal which does not contemplate an absence from the former domicile for an indefinite and uncertain time is not a change of it.   But when there is a removal, unless it can be shown or inferred from circumstances that it was for some particular purpose, expected to be only of a temporary nature, or in the exercise of some particular profession, office, or calling, it does change the domicile.   The result is that the place of residence is *prima facie* the domicile, unless there be some motive for that residence not inconsistent with a clearly-established intention to retain a permanent residence in another place."

Lord Thurlow, in *Bruce* v. *Bruce,* reported in a note to *Marsh* v. *Hutchinson,* 2 Bos. & P. 229, laid down this rule:

"A person's being at a place is *prima facie* evidence that he is domiciled at that place, and it lies on those who say otherwise to rebut that evidence."

In *Bempde* v. *Johnstone,* 3 Ves. 198, Lord Loughborough laid down the same rule.

It is insisted, however, by counsel for relator, that this presumption has been overcome by the testimony of relator and his witnesses; that from such testimony it conclusively appears that the relator left Negaunee for temporary purposes only, and with the intention to return there as soon as the trust which he had assumed as one of the administrators of his father's estate had been fully discharged.   If we were to decide the question here *de novo,* I am strongly of the opinion that the great weight of the evidence is in favor of the proposition that the relator intended, when he left Negaunee, to return there, and that his residence in Detroit was intended as temporary only, and to continue only during the time necessary to settle up his father's estate.   But the case is before us on *certiorari,* and the question to be determined is whether there is any evidence from which the jury or the court could legitimately find that his intention was to fix his domicile in Detroit.   The fact is established that he actually resides

there.   He has built an expensive house.   It appears that in building it his wife made certain suggestions as to the internal arrangements, and evidently with a view of making it a home.   The house in Negaunee where he lived belonged to his father, and the only house which he actually owns is the one built by him in Detroit.   It does not appear that he was ever assessed upon this large amount of personal property in Negaunee.   He does not suggest that he is not possessed of it, or that it is not property subject to taxation.   The question was fully submitted to the jury, and their finding is against him upon the question of fact.

It is claimed that the court should have determined the question, instead of the jury.   However that question might be determined, the finding of the jury was evidently acquiesced in by the court, for the court confirmed their finding, and evidently was satisfied with it.   We are satisfied that there is some evidence in the case which the jury and the court below might properly consider in determining the question of fact.

Section 13, Act No. 206, Pub. Acts 1893, provides that:

"All personal property, except as hereinafter provided, shall be assessed to the owner in the township of which he is an inhabitant on the second Monday of April of the year for which the assessment is made."

The proceedings below must be affirmed, with costs.

The other Justices concurred.