Marilyn Kelly, J.
(dissenting). At issue in this case is whether defendant, a homeless person who is subject to the Sex Offenders Registration Act (SORA),[1] violated the act when he failed to report a residence or domicile. The majority concludes that homelessness does not prevent compliance with SORA. Accordingly, it reverses the judgment of the Court of Appeals, which held that homeless individuals have neither a “residence” nor a “domicile” as those terms are used in SORA.[2] For the *394 reasons I will detail, I believe the Court of Appeals properly held that, as a matter of law, defendant could not have complied with SORA’s registration and reporting requirements. Accordingly, I dissent.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
In 1984, defendant pled guilty of kidnapping, first-degree criminal sexual conduct (CSC I), and felony-firearm. Under the terms of his plea agreement, he was sentenced to a mandatory two-year term for the felony-firearm conviction, followed by concurrent 10- to 20-year terms for the kidnapping and CSC I convictions. The Court of Appeals affirmed the judgment.[3]
When defendant was released from prison in November 2002, he signed a form that set forth his reporting obligations under SORA. He provided “430 North Larch, Lansing, Michigan” as his address, which is the location of a homeless shelter operated by Volunteers of America (VOA). Apparently, defendant never resided at the VOA. Rather, as the senior manager for social services at the VOA testified, defendant was at the shelter only for meals. When the manager became aware that defendant had listed the VOA as his address for purposes of SORA registration, she advised him that he was ineligible for VOA services. Defendant did not return to the VOA, and he remained homeless at all times relevant to this case.
Law enforcement agencies often run verification tests to determine whether persons required to register and report under SORA have complied. In 2006, Lansing police performed such a test and learned that defendant had failed to report as required. An officer visited the VOA in an attempt to verify defendant’s location, but was told that defendant had “moved out.”
*395 Consequently, defendant was charged with five criminal counts alleging failure to comply with SORA. Notwithstanding that the complaint and an entry on a preliminary data sheet show defendant as “homeless” and with “no address,” the information lists his address as the VOA’s Larch Street address. Following the preliminary examination, the Ingham Circuit Court bound him over on the charged offenses. Defendant then filed a motion to dismiss the charges, arguing that his homelessness rendered him incapable of complying with SORA’s requirement that he report a “residence” to law enforcement. The trial court agreed with him and dismissed the charges. The Court of Appeals denied the prosecution’s application for leave to appeal for lack of merit. But we remanded the case to the Court of Appeals for consideration as on leave granted.[4]
On remand, the Court of Appeals affirmed the trial court.[5] It held that, because defendant had neither a residence nor a domicile at which to register, he could not comply with the reporting requirements of SORA.[6] The Court of Appeals reasoned that the location where a nomadic homeless person spends the night does not fall within the ambit of SORA’s definition of “residence.” The Court concluded that the Legislature had written SORA’s reporting requirements for persons who have a domicile or residence. It urged legislators to consider changes to SORA to make it possible for the homeless to comply.
We granted the prosecution’s application for leave to appeal.[7]
*396 STANDARD OF REVIEW AND LEGAL BACKGROUND
Generally, a trial court’s ruling on a motion to quash an information is reviewed for an abuse of discretion.[8] However, the trial court’s ruling in this case was based on its interpretation of SORA, which raises an issue of statutory interpretation. The proper interpretation of a statute presents a question of law, which we review de novo.[9]
It is not often that the Legislature expressly includes the purpose of an act in its provisions. Yet it did just that in writing SORA, providing in MCL 28.721a:
The legislature declares that [SORA] was enacted pursuant to the legislature’s exercise of the police power of the state with the intent to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders. The legislature has determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state. The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger.
When we interpret a statute, our goal is to give effect to the intent of the Legislature.[10] The first step in ascertaining its intent is to consider the language of the statute itself. Generally, the words provide the most reliable evidence of the Legislature’s intent, and, as far *397 as possible, we give separate meaning to every phrase, clause, and word.[11]
At issue in this case is the scope of SORA’s provisions mandating registration and reporting. Specifically, defendant was charged with violating SORA by failing to notify law enforcement of a change in his residence or domicile. He was also charged with failure to comply with SORA’s quarterly reporting requirements. Those requirements are set forth in MCL 28.725 and MCL 28.725a.
During most of the period in which defendant was charged with violating MCL 28.725(1), it provided, in relevant part:
Within 10 days after any of the following occur, an individual required to be registered under this act shall notify the local law enforcement agency or sheriffs department having jurisdiction where his or her new residence or domicile is located or the [state police] department post of the individual’s new residence or domicile:
(a) The individual changes or vacates his or her residence, domicile, or place of work or education . .. [12]
MCL 28.725a(4) provided, in relevant part:
[Fallowing initial verification ... or registration ..., an individual required to be registered under this act who is not incarcerated shall report in person to the local law enforcement agency or sheriffs department having jurisdiction where he or she is domiciled or resides or to the department post in or nearest to the county where he or she is domiciled or resides for verification of domicile or residence as follows:
*398 (b) If the person is registered for 1 or more felony listed offenses, not earlier than the first day or later than the fifteenth day of each April, July, October, and January following initial verification or registration.
Thus, defendant’s potential criminal liability under SORA hinges on whether he changed, or failed to quarterly report, a residence or domicile.
DEFENDANT DID NOT HAVE A “RESIDENCE” FOR PURPOSES OF SORA
The majority errs in its interpretation of SORA in numerous respects. First, it erroneously concludes that defendant, who was homeless at all times relevant to the charges that he failed to report, had a “residence” for purposes of the act. SORA specifically defines “residence” at MCL 28.722(g) as “that place at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging.”
Thus, to establish a “residence,” all three parts of the definition must be satisfied. As to the first, “habitual” is defined as “of the nature of a habit[.]”[13] A “habit” is (1) “an acquired pattern of behavior that has become almost involuntary as a result of frequent repetition,” (2) “customary practice or use,” or (3) “a particular practice, custom, or usage[.]”[14] The second and third parts are self-explanatory in that they require a “residence” to be a regular place of lodging where a person keeps his or her personal effects.
Defendant was unable to satisfy any part of the definition, let alone all three. When one applies the dictionary definitions of these terms and a modicum of common sense, it becomes obvious that defendant had *399 no “residence” as that term is used in SORA. He had no habitual place at which to sleep. He had no place at which he kept his personal effects. Nor did he have a regular place of lodging.
A park bench, highway underpass, or steam grate may qualify as a place where a homeless individual sleeps, but they hardly qualify as a “regular place of lodging” under the statute. As the Court of Appeals astutely observed,
the concepts of habitually and regularity are antithetical to the circumstances of homelessness. If there is anything “habitual” to the sleeping arrangements of the homeless, it is that it is customary for them not to have the security of a customary place of lodging. If there is anything “regular” about the place where a homeless person lives, it is that it is not within a home.[15]
The majority misinterprets this passage as equating a “residence” with a home. It does no such thing. The Court of Appeals merely pointed out that the homeless generally do not have a place at which they habitually sleep, keep their personal belongings, and customarily lodge. Hence, they often lack a “residence” under SORA.[16] To the extent that these criteria are tradition *400 ally associated with a home, the Court of Appeals was simply applying the Legislature’s chosen definition of “residence.”
The majority commits an even more egregious error by stating that “the definition of ‘residence’ merely contemplates a ‘place.’ ”[17] This judicially derived shorthand definition aids the majority in holding that a vacant house or park qualifies as a residence under SORA. But the term “place,” standing alone, is not found within the relevant provisions of the act. Instead, SORA enumerates three criteria that must be satisfied for a “place” to be considered a “residence.” Those are the criteria that the majority fails to faithfully apply. Simply put, applying MCL 28.722(g) as written, defendant did not have a “residence.”
DEFENDANT DID NOT HAVE A “DOMICILE” FOR PURPOSES OF SORA
The majority next errs by perverting the legal definition and application of the term “domicile.” The word “domicile” is not defined in SORA. However, because “domicile” has acquired a peculiar meaning under the law, we should construe and apply the word according to that meaning.[18]
*401 Numerous cases have discussed the concept of domicile. In fact, for more than 160 years, the Court has defined “domicile” as a person’s “permanent home.”[19] This definition is consistent with Black’s Law Dictionary (9th ed), which defines “domicile” as “the place at which a person has been physically present and that the person regards as home; a person’s true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere.”
As the majority acknowledges, the terms “domicile” and “residence” have often been used interchangeably and synonymously.[20] In Campbell v White, this Court approvingly quoted the following passage:
“Ordinarily one’s residence and domicile (if they do not always mean the same thing) are in fact the same, and where they so concur they are that place which we all mean when we speak of one’s home. And it may safely be asserted that where one has a home, as that term is ordinarily used and understood among men, and he habitually resorts to that place for comfort, rest and relaxation from the cares of business, and restoration to health, and there abides in the *402 intervals when business does not call — that is his residence, both in the common and legal meaning of the term.”[21]
The majority trumpets the proposition that every person has a domicile. Under our centuries-old case-law, that would be true only if every person had a permanent home. Unfortunately, that postulation is belied by reality, and, what is more important in the context of this case, SORA makes no such assumption. In support of its analysis, the majority selectively cites one sentence from Beecher v Common Council of Detroit[22] for the proposition that every person has a domicile, while omitting the next sentence. In its entirety, the relevant portion of Beecher provides:
Every person must have a domicile somewhere. The domicile is acquired by the combination of residence and the intention to reside in a given place, and can be acquired in no other way. The residence which goes to constitute domicile need not be long in point of time. If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile.[23]
Hence, to establish a domicile, a person must first *403 establish a residence.[24] Thus, the case the majority cites for the proposition that every person must have a domicile made the proposition contingent on the underlying assumption that the person first had a residence. And as previously discussed, given that defendant did not have a residence, then by definition he did not have a domicile as that word is used in SORA. Consequently, the majority’s claim that defendant must have a domicile for purposes of SORA is legally unsupported.[25]
Perhaps more alarming, the majority does not engage in an analysis of whether defendant has a “domicile” under any definition of that term. Rather, it states as an ipse dixit that defendant must have a domicile. It then makes a leap in logic by concluding that “123 Home *404 less” qualifies as a domicile. This conclusion is unsupported by the majority’s cited (but not applied) definition of “domicile” as “the place where a person has his home, with no present intention of removing, and to which he intends to return after going elsewhere for a longer or shorter time.”[26] As further explained later in this opinion, a fictitious address does not satisfy any definition of “domicile.” The majority opinion is devoid of a meaningful legal analysis with respect to defendant’s domicile or lack thereof.
Even assuming, arguendo, that all persons do have a domicile, defendant still could not comply with SORA’s registration and reporting requirements. The written form that each convicted sex offender must tender upon registration, Michigan State Police Form DD-004, requires the submission of general offender information (name, date of birth, height, weight, etc.), offense information (offense date, place of crime, conviction type, etc.), and address information.[27] Under the address heading, a convicted sex offender is required to list a “Current Primary Address.” The form provides space for two address lines, an apartment or lot number, city, state, zip code, county, and a telephone number. The form also provides for the name of a penal institution if the offender is incarcerated.
Not only was defendant incapable of providing a current primary address pursuant to the form’s instructions, but he was incapable of listing a residence or domicile. Those terms are absent from the form, which *405 also fails to instruct an offender how to register if he or she does not have a residence. And given that “residence” and “domicile” have often been considered synonymous in the eyes of the law, this Court cannot reasonably expect the homeless to discern a difference between them.[28]
The majority ignores this practical reality by stating that “difficulties in verifying an offender’s information do not excuse the offender from complying with [SORA].”[29] This distinguishes between verification of a “residence” or “domicile” and compliance with registration and reporting requirements. SORA does not make this distinction. I ask the majority to explain how defendant could have adequately completed the registration form when he had no residence or domicile as the majority itself defines those terms, i.e., as “the place where a person has his home. . . .”[30] This is not a rhetorical question, and its lack of a legally defensible answer should give the majority pause.
THE MICHIGAN STATE POLICE ORDER CONTRAVENES SORA
Defendant’s lack of a “residence” or “domicile” aside, the majority relies on the fact that MCL 28.725a(8) *406 empowers the Michigan State Police to “specify other satisfactory proof of domicile or residence” to facilitate compliance with SOBA. In what was likely an attempt to remedy the problem of homeless sex offenders who lack a residence or domicile, the Michigan State Police issued an official order indicating that, “ [i]f [an] offender is homeless, the generic address of ‘123 Homeless’ shall be entered into the computerized database, along with the offender’s city, state, zip code, and county code.”[31] The majority seizes on this order as proof that defendant could indeed have complied with SOBA by telling police that he was homeless. In turn, the police could then have entered “123 Homeless” in the registry on his behalf. There are several critical flaws in this reasoning.
An agency order is unlawful if it is based on an erroneous interpretation of a statute.[32] Although this Court accords due deference to an agency’s interpretation of a statute, we grant no deference to an interpretation that contravenes the language of a statute.[33] Furthermore, when interpreting statutes, we give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory.[34] Under SOBA, two provisions preclude the listing of 123 Homeless as an offender’s address.
The first is MCL 28.727(6), which provides that “[a]n individual shall not knowingly provide false or mislead *407 ing information concerning a registration, notice, or verification.” Without question, the generic address 123 Homeless would be a false and misleading address because that address does not exist in Michigan.[35] Thus, listing 123 Homeless, which cannot be verified as an address, would violate MCL 28.727(6). Moreover, it would subject those who list it, including a police officer who does so on behalf of a homeless offender, to criminal prosecution. For purposes of MCL 28.727(6), it does not matter if an offender honestly informs the police that he or she is homeless. Even if the offender is homeless, a police officer may not lawfully enter into the SORA registry an address that does not exist. Accordingly, the Michigan State Police order contravenes SORA.
The second statutory provision that renders the Michigan State Police order unlawful is MCL 28.725a(8). It requires “individuals . . . registered under [SORA to] maintain either a valid [driver’s] license .. . or an official state personal identification card . . . with the individual’s current address.” (Emphasis added.)
However, to obtain a driver’s license or state identification card, the Secretary of State requires an applicant to provide at least two documents “with [his or her] name and Michigan residence address.”[36] Hence, by the Secretary of State’s own requirements, an individual cannot obtain a state identification card absent a *408 valid residential address, which defendant did not have. Nor does the majority, the Michigan State Police, or the prosecutor indicate how a homeless sex offender like defendant could obtain an identification card without a permanent address, much less change an address to reflect transient accommodations.
This analysis is further supported by the Michigan State Police order — the very order flaunted by the majority as proof that defendant could have registered 123 Homeless as his address. The order provides:
The address on the [sex offender registry] record must match the address on the Michigan driver license or Personal Identification Card. If the address does not match, the member shall give the offender the opportunity to immediately visit the nearest Secretary of State branch office for the necessary address change and return to the post to verify their address before taking enforcement action.[37]
Thus, if an offender cannot verify his or her address upon registration, the order requires that the offender be directed to the Secretary of State for an identification card with a valid address. Why? Because MCL 28.725a(8) mandates that the address entered in the sex offender registry match the address on an offender’s identification card. But as demonstrated earlier, a homeless offender cannot obtain such a card because 123 Homeless is a bogus address. Accordingly, the Michigan State Police order further undermines the majority’s analysis.
Applying MCL 28.725a(8) to the facts of this case, contrary to the majority’s assertion, the address 123 Homeless will never be sufficient for purposes of SORA. That address cannot match the address on a homeless *409 offender’s identification card because a homeless person cannot obtain an identification card to comply with SORA. This Catch-22 highlights the facile nature of the majority’s analysis. SORA does not permit registration using 123 Homeless. The majority is unable to refute this fact.
The majority speculates that the approach taken in my dissent would incentivize sex offenders who do have a home to report that they are homeless.[38] It fails to recognize that its opinion is equally susceptible to this conundrum. The majority opines that an offender need report only that he or she is homeless. The police will in turn record that information and enter “123 Homeless” into the sex offender registry.
As indicated in MCL 28.721a, SORA was designed to assist law enforcement and residents of this state in preventing and protecting against the commission of criminal sexual conduct by convicted sex offenders. SORA’s registration requirements are intended to provide a comprehensive and effective means to monitor those persons. The registration of a legitimate address that constitutes a residence or domicile that can be verified by law enforcement furthers this goal. Likewise, the public is able to monitor the address of convicted sex offenders by visiting the online sex of *410 fender registry, which provides a comprehensive database of offenders’ addresses.[39]
But by validating the Michigan State Police order and effectively mandating that homeless sex offenders who do not have a residence or domicile register with 123 Homeless, the majority purges SORA of any meaning. As of today, any convicted sex offender who wishes to keep secret his or her whereabouts may be registered at the fictitious address 123 Homeless. Registration at this fictitious address is tantamount to, and in fact more misleading to the public than, an utter failure to register. Families with young children who visit the online sex offender registry will not be able to learn the whereabouts of these offenders. But they will be able to discern the consequences of this Court’s approval of the registration of a fictitious address when they are left wondering where 123 Homeless is. Compliance for compliance’s sake is worthless if it provides no valuable practical information.[40] Thus, the majority’s criticism of the consequences of this dissent applies with equal weight to its own opinion.[41]
In sum, because the Michigan State Police order contravenes the language of SORA, it is unlawful. The *411 majority’s reliance on that order lacks a meaningful basis in the law and renders two provisions of the act utterly meaningless.
CONCLUSION
I dissent from the majority’s decision to reverse the judgment of the Court of Appeals. Not having a residence or domicile, as those terms are used in SORA, is often a sad reality of the homeless. Had they a place where they habitually slept, kept their personal belongings, and regularly lodged, they would no longer be homeless. Because defendant did not have a residence or domicile under SORA, he could not be held criminally liable for failure to register or report. Therefore, the trial court did not abuse its discretion by granting defendant’s motion to quash the information.
The majority construes my interpretation of SORA as rendering imperfect the tracking of homeless sex offenders. To the extent that it does so, my interpretation is steadfastly faithful to the language of SORA. The majority’s is not. It defies SORA, the Michigan State Police order, and common sense.
Cavanagh and Hathaway, JJ., concurred with Marilyn Kelly, J.

 MCL 28.721 et seq. On April 12, 2011, the Legislature amended SORA, including the definition of “residence” germane to this appeal. See 2011 PA 17. However, those amendments do not apply to this case given that defendant was charged with violating SORA in its previous form.

 To the extent that the Court of Appeals’ holding can be construed as definitively precluding application of SORA’s registration and reporting requirements to all homeless sex offenders, I believe that it erred. However, the majority commits the same error by reaching the opposite conclusion — that SORA’s registration and reporting requirements categorically do apply to all homeless sex offenders. The more nuanced question in this appeal is whether this defendant could be criminally charged for his alleged failure to comply with SORA.

 People v Dowdy, 148 Mich App 517; 384 NW2d 820 (1986).

 People v Dowdy, 484 Mich 855 (2009).

 People v Dowdy, 287 Mich App 278; 787 NW2d 131 (2010).

 Id. at 281-282.

 People v Dowdy, 486 Mich 935 (2010).

 People v Thomas, 438 Mich 448, 452; 475 NW2d 288 (1991).

 Univ of Mich Regents v Titan Ins Co, 487 Mich 289, 297; 791 NW2d 897 (2010).

 Brown v Detroit Mayor, 478 Mich 589, 593; 734 NW2d 514 (2007).

 Petersen v Magna Corp, 484 Mich 300, 307; 773 NW2d 564 (2009).

 This provision was amended effective December 1, 2006; however, the amendment did not affect the substantive requirements applicable to defendant in this case. See 2006 PA 402.

 Random House Webster’s College Dictionary (2001).

 Id.

 Dowdy, 287 Mich App at 282.

 I do not believe that all homeless sex offenders are incapable of registering and reporting under SORA. For example, homeless sex offenders may have a “residence” or “domicile” pursuant to SORA if they stay at the home of a relative, friend, or at a shelter. These offenders might easily he considered homeless in that they lack what is traditionally considered permanent housing. But their accommodations would nevertheless satisfy SORA’s definition of “residence.”
The majority claims, ante at 383-384 n 31, that I “would require only those offenders who live in a home, apartment, or homeless shelter to comply with SORA.” That is manifestly incorrect, as evidenced by my preceding analysis. Unlike the majority, I would apply MCL 28.722(g) in its entirety and require registration for those offenders who have a “residence” as defined by SORA as “[a] place at which a person habitually *400 sleeps, keeps his or her personal effects, and has a regular place of lodging.” (Emphasis added). Whether a “residence” is a “home, or, indeed, [a] structure at all,” ante at 384 n 31, is immaterial. And contrary to the majority’s reading of my dissent, nothing I have written here stands for the proposition that, to be subject to SORA’s requirements, an offender must live in a home or structure. I have simply applied the unabridged definition of “residence” as provided by the Legislature.

 Ante at 383.

 See MCL 8.3a, which provides:
All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a *401 peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

 See, e.g., In re High, 2 Doug 515, 523 (Mich, 1847) (“Domicile has been defined to be the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning!)]”); Henry v Henry, 362 Mich 85, 101-102; 106 NW2d 570 (1960) (“[A domicile is] that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time.”) (citations and quotation marks omitted).

 See, e.g., Cervantes v Farm Bureau Gen Ins Co, 478 Mich 934, 936 (2007) (Markman, J., dissenting); Workman v Detroit Auto Inter-Ins Exch, 404 Mich 477, 495; 274 NW2d 373 (1979).

 Campbell v White, 22 Mich 178, 197 (1871), quoting Chaine v Wilson, 14 NY Sup Ct 673; 8 Abb Pr 78 (1858).

 Beecher v Common Council of Detroit, 114 Mich 228; 72 NW 206 (1897).

 Id. at 230 (emphasis added; citations omitted). In In re High, this Court wrote that “every man must have ... a national domicile somewhere.” High, 2 Doug at 523 (emphasis added). In other words, one cannot be a man without a country. But the Court recognized that a domicile was “defined to be the habitation fixed in any place without any present intention of removing therefrom!.]” Id. Therefore, domicile must be established through residence, but residence “is not indispensible to retain domicile after it has been once acquired!.]” Id. Thus, the Court recognized a distinction in scope between domicile and residence.

 The majority’s chosen definition of “domicile” supports this conclusion. For example, it states that Michigan courts have defined “domicile” as “that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time.” Ante at 385 (citations and quotation marks omitted). “Abode” is defined as “a place in which a person resides; residence; dwelling; home.” Random House Webster’s College Dictionary (2001). Thus, there is a two-step process to establishing a domicile, the first of which is establishing a residence.

 The majority also claims that the Michigan State Police order allows the police to “accept as ‘satisfactory proof of the offender’s ‘domicile’ the state, city, zip code, and county in which the offender lives .... Thus, when the homeless sex offender’s ‘domicile’ is registered as ‘123 Homeless’ in the city in which the offender lives, that is the offender’s statutory domicile for purposes of SORA.” Ante at 386. This is simply false. The Michigan State Police order provides, in relevant part, “If the offender is homeless, the generic address of ‘123 Homeless’ shall be entered into the computerized database, along with the offender’s city, state, zip code, and county code.” Michigan State Police, Official Order No. 79, issued April 27, 2007 (MSP Order), p 4. The order does not state that this information constitutes an offender’s domicile (or residence). Nor is there any authority, be it caselaw, statute, or otherwise, that establishes that a state, city, zip code, and county constitute a domicile. Therefore, those generic locations may furnish evidence of an offender’s location, but the order cannot trump our binding legal definitions of “domicile.”

 Ante at 385 (citation and quotation marks omitted).

 Michigan State Police Form DD-004 (12/2007), available at <http://www.michigan.gov/documents/msp/dd-004_218346_7.doc> (accessed July 7, 2011); see also Michigan State Police Form DD-004R (12/2007), available at <http://www.michigan.gov/documents/msp/dd-004R_218341_ 7.doc> (accessed July 7, 2011).

 I further question whether SORA, as applied in this case, is unconstitutionally vague for lack of objective standards or guidelines. Arguably, SORA did not give defendant notice of what conduct was required of him with respect to registration as a homeless individual. See, e.g., Santos v State, 284 Ga 514; 668 SE2d 676 (2008), in which the Georgia Supreme Court held that a statutory sex-offender-registration requirement was unconstitutionally vague as applied to homeless sex offenders with no street address for a residence. However, because I believe this case can be resolved on statutory grounds, I do not reach this constitutional issue. See Smith v Curran, 267 Mich 413, 418; 255 NW 276 (1934) (indicating that questions of constitutionality should not be decided if a case can be disposed of on other grounds).

 Ante at 386 (emphasis in original).

 Ante at 385 (citation and quotation marks omitted).

 MSP Order, p 4.

 Ass’n of Businesses Advocating Tariff Equity v Pub Serv Comm, 219 Mich App 653, 659; 557 NW2d 918 (1996).

 Ludington Serv Corp v Acting Ins Comm’r, 444 Mich 481, 505; 511 NW2d 661 (1994).

 Pittsfield Charter Twp v Washtenaw Co, 468 Mich 702, 714; 664 NW2d 193 (2003); see also Grimes v Dep’t of Transp, 475 Mich 72, 89; 715 NW2d 275 (2006).

 A cursory Google Maps search indicates that the only street in the United States named “Homeless Road” is in Kitts Hill, Ohio. Ironically, it does appear that there are homes on that street. In any event, even if 123 Homeless did exist in Michigan, it would still be a false address if an offender who registered it did not live there.

 See the Secretary of State’s form “Applying for a license or ID?” available at <http://www.michigan.gov/documents/sos/Applying_for_ lic_or_ID_SOS_428_222146_7.pdf> (accessed July 7, 2011).

 MSP Order, p 4 (emphasis added).

 The online article the majority cites in support of this claim does not offer any verifiable statistics of an increase in allegedly homeless sex offenders. Rather, the article merely credits this increase to the opinion of a single police officer. In fact, the article states that “[p]olice aren’t sure how many of Michigan’s 260 sex offenders who list themselves as homeless are using the law to avoid registering. . . .” McVicar, Since court ruled homeless sex offenders don’t have to register, number claiming homelessness jumps 62 percent, Grand Rapids Press, available at <http://www.mlive.com/news/grand-rapids/index.ssf/ 2010/05/since_court_ruled_homeless_sex.html> (accessed July 7, 2011). In any event, absent real statistics, the majority’s claim remains merely speculative.

 The Michigan Public Sex Offender Registry is available at <http://www.mipsor.state.mi.us/> (accessed July 7, 2011).

 This is especially true in light of the majority’s misinterpretation and misapplication of “residence” and “domicile” as those terms are used in SORA.

 The majority mischaracterizes my dissent by claiming that I would allow homeless offenders “to opt out of complying with SORA.” Ante at 386 n42; see also ante at 391. Nothing in my opinion allows all homeless offenders to opt out of SORA registration. Rather, I would hold that this defendant, as a matter of law, could not have complied with SORA because he did not have a “residence” or “domicile” as contemplated by the act.
The majority further errs by claiming, absent any authority, that “SORA ensures that [a] homeless sex offender is capable of providing sufficient information to comply with SORA’s registration require *411 ments.” Ante at 386 n 42. The majority does not cite any statutory language in support of this naked assertion because there is no such language in the act.