*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KOREY SHAW,

        Plaintiff-Appellee,

v

CONNOR WICKERSHAM,

        Defendant,

and

MEMBERSELECT INSURANCE COMPANY,

        Defendant-Appellant.

UNPUBLISHED
October 14, 2025
8:47 AM

No. 370290
Wayne Circuit Court
LC No. 22-006548-NI

Before: FEENEY, P.J., and BORRELLO and BAZZI, JJ.

PER CURIAM.

In this no-fault priority dispute, defendant, MemberSelect Insurance Company, appeals by leave granted[1] the trial court's order denying defendant's motion for summary disposition and granting plaintiff, Korey Shaw, summary disposition, of plaintiff's claim for personal protection insurance (PIP) benefits.[2] For the reasons set forth in this opinion, we affirm the trial court's denial of defendant's motion for summary disposition, vacate the award of summary disposition in favor of plaintiff, and remand to the trial court.

---

[1] *Shaw v Wickersham*, unpublished order of the Court of Appeals, entered May 21, 2024 (Docket No. 370290).

[2] Defendant Conner Wickersham is not involved in this appeal; as such Memberselect will be referred to as "defendant" herein.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from a vehicle-pedestrian collision that occurred on September 17, 2021—the facts of which are not in dispute. Plaintiff was crossing Seven Mile Road near the intersection with Snowden Street in Detroit, Michigan, when a vehicle driven by defendant Connor Wickersham hit him, and plaintiff sustained injuries. At the time of the collision, plaintiff was staying with his cousin, Jeanine Shaw, and his aunt, Shirley Shaw, in Jeanine's home on Snowden Street. Jeanine and Shirley were covered by a no-fault automobile insurance policy issued by defendant in effect at this time. They were the only named insureds on the policy, the only two household residents listed, and their two vehicles were the only covered vehicles. Jeanine never called defendant to inform a representative that plaintiff was staying with her and Shirley, and plaintiff did not drive either vehicle because he had a suspended license.

Plaintiff stayed in several other places in the years leading up to this incident. He was incarcerated twice, he stayed with other relatives, he rented an apartment in Redford for approximately one year in 2020, and immediately before staying with the Shaws, he was living in a hotel. Plaintiff testified that he had been staying at the Shaws for months when the collision occurred; Jeanine and Shirley both testified that it had only been a few days. He stayed in the basement of the Shaws' home, on the couch. All he brought with him was a bag of clothing. He did not pay the Shaws rent, or contribute to utilities, nor did Shirley or Jeanine support plaintiff financially. Jeanine and Shirley told plaintiff he could stay with them for a "certain amount of time" to get his affairs in order, and so that plaintiff would not have to stay at the hotel or be houseless. It was the Shaws' understanding that it was a temporary arrangement, and that it was plaintiff's "goal" to move out. Plaintiff obtained a new state identification card (state ID) on October 22, 2021, listing the Shaws' Snowden address. He moved out in December 2021.

Plaintiff filed suit against defendant and Wickersham in June 2022. He alleged one count of negligence against Wickersham, and plaintiff made a claim for first-party PIP benefits against defendant, asserting he was covered by an insurance policy issued by defendant on the date of the collision. Wickersham moved for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) on the basis of comparative negligence, which the trial court denied, but the parties later stipulated to the dismissal of plaintiff's claims against Wickersham.

Defendant also moved for summary disposition under MCR 2.116(C)(10), asserting there was no genuine issue of material fact that plaintiff was not domiciled with the Shaws; thus, the Shaws' policy did not apply, and plaintiff was not entitled to PIP benefits from defendant. Plaintiff responded that the evidence established that he was domiciled with the Shaws as a matter of law, and summary disposition was improper. The court concluded that because every person has a domicile, and there was no other place where plaintiff's domicile could be, plaintiff was domiciled with the Shaws as a matter of law. The court denied defendant summary disposition, and granted plaintiff summary disposition under MCR 2.116(I)(2).[3] Defendant moved for reconsideration, arguing that plaintiff was not domiciled with the Shaws, but rather, his last-rented apartment in

---

[3] MCR 2.116(I)(2) states, "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party."

Redford was his domicile, or, plaintiff did not have one. Defendant also argued that summary disposition in favor of plaintiff was improper because he carried the burden to prove his domicile with the Shaws, which he failed to do. The court allowed responsive briefing and held oral argument, noting the lack of caselaw providing that a person could have no domicile for purposes of the no-fault act, MCL 500.3101 *et seq*. Again, the court could not "come up with any possible other domicile" than the Shaws' home, and denied reconsideration. This appeal ensued.

## II. STANDARDS OF REVIEW

Defendant moved for summary disposition under MCR 2.116(C)(10). This Court reviews a trial court's decision to grant or deny summary disposition de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020).

> A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law. [*Id*. (quotation marks and citation omitted).]

"The moving party must first specifically identify the issues as to which it believes there is no genuine issue as to any material fact, and has the initial burden of supporting its position with affidavits, depositions, admissions, or other admissible documentary evidence." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475; 776 NW2d 398 (2009) (quotation marks, citations, and brackets omitted). When this burden is met, the burden then shifts to the nonmoving party to establish a genuine issue of material fact for trial. *Id*. The nonmoving party may not rely on mere allegations or denials in the pleadings, but must set forth specific facts showing that a genuine issue of material fact exists. *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). To determine whether a genuine issue of material fact exists, the court must consider the documentary evidence in the light most favorable to the nonmoving party. *Id*. "A domicile determination is generally a question of fact; however, where the underlying material facts are not in dispute, the determination of domicile is a question of law for the circuit court." *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 490; 835 NW2d 363 (2013).

Issues of statutory interpretation are also reviewed de novo. *Progress Mich v Attorney General*, 506 Mich 74, 85-86; 954 NW2d 475 (2020). "The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language." *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012) (quotation marks and citation omitted). "If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *Id*. at 534 (quotation marks and citation omitted). Only if a statute is ambiguous or in conflict with another provision does a court clarify the language through judicial construction. *McCahan v Brennan*, 291 Mich App 430, 433; 804 NW2d 906 (2011), aff'd 492 Mich 730 (2012).

Under MCR 2.116(I)(2), the trial court may grant summary disposition in favor of the party opposing summary disposition "[i]f it appears to the court that the opposing party, rather than the

moving party, is entitled to judgment." Where a party moves for summary disposition under MCR 2.116(C)(10), and the trial court grants summary disposition in favor of the opposing party under MCR 2.116(I)(2), this Court employs the standard of review for a motion under MCR 2.116(C)(10). *Cadillac Rubber & Plastics, Inc v Tubular Metal Sys, LLC*, 331 Mich App 416, 421-422; 952 NW2d 576 (2020). And "[i]f, after careful review of the evidence, it appears to the trial court that there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law, then summary disposition is properly granted under MCR 2.116(I)(2)." *Id*. at 422.

### III. DOMICILE

Defendant argues that the trial court erred by denying its motion for summary disposition under MCR 2.116(C)(10), and granting plaintiff summary disposition under MCR 2.116(I)(2), of plaintiff's PIP claim, because plaintiff was not domiciled with the Shaws on the date of the collision, or, at minimum, questions of fact existed regarding plaintiff's domicile.

MCL 500.3114(1) of the no-fault act provides that "[e]xcept as provided in subsections (2), (3), and (5), a [PIP] policy . . . applies to accidental bodily injury to the person named in the policy, the person's spouse, and *a relative of either domiciled in the same household*, if the injury arises from a motor vehicle accident." (Emphasis added.) The no-fault act does not define the term "domiciled." *Grange*, 494 Mich at 492. Typically, undefined statutory terms are given their ordinary and commonly used meaning; however, technical words that acquire a particular meaning in the law are construed according to that meaning. *Id*. at 493. The *Grange* Court concluded that "domicile" has a precise, technical meaning, as provided in common law. *Id*.

Domicile, therefore, is "the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Id*. (quotation marks and citation omitted). In other words, it is "that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time." *Id*. (quotation marks and citations omitted). It is well-settled that a person cannot have more than one domicile at the same time, and that every domicile continues until a new one is acquired, thereby terminating the previous one. *Id*. at 493-494. "[T]here are few legal axioms as established as the one providing that *every person has a domicile*." *Id*. at 494 (emphasis added); see also *Beecher v Common Council of Detroit*, 114 Mich 228, 230; 72 NW 206 (1897) ("Every person must have a domicile somewhere.") "Domicile" is distinguishable from "residence" because "domicile is acquired by the combination of residence and the intention to reside in a given place . . . . If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile." *Grange*, 494 Mich at 495 (quotation marks and citation omitted; alteration in original). A person may have more than one residence, but only one domicile. *Id*. at 494.

The factors to consider in determining a person's domicile under MCL 500.3114(1) were first provided in *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477, 496-497; 274 NW2d 373 (1979). See *Grange*, 494 Mich at 497. These factors are:

(1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises, [and] (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household. [*Workman*, 404 Mich at 496-497 (citations omitted).]

No one factor is determinative; each factor must be balanced and weighed among the others. *Id*. at 496.

In the context of adult children who move out of their parents' home, but still claim the parents' home as their domicile for no-fault coverage, this Court articulated additional factors to consider in *Dairyland Ins Co v Auto Owners Ins Co*, 123 Mich App 675, 682; 333 NW2d 322 (1983):[4]

whether the claimant continues to use his parents' home as his mailing address, whether he maintains some possessions with his parents, whether he uses his parents' address on his driver's license or other documents, whether a room is maintained for the claimant at the parents' home, and whether the claimant is dependent upon the parents for support.

Although plaintiff notes that *Dairyland* is distinguishable because he is not an adult child claiming domicile in his parents' home, and argued in the trial court that *Dairyland* did not apply, the *Grange* Court made clear that these factors may be considered outside of that context. See *Grange*, 494 Mich at 497 n 41 ("The *Workman-Dairyland* multifactored framework comprises the one now commonly employed by Michigan courts when a question of fact exists as to where a person is domiciled.").

Applying the *Workman-Dairyland* factors to the facts of this case, we conclude that genuine issues of material fact existed whether plaintiff was "domiciled" with the Shaws on the date of the collision for purposes of no-fault coverage, and therefore, summary disposition in favor of either party was inappropriate. Although the trial court denied defendant summary disposition based on its finding that plaintiff was domiciled with the Shaws, rather than based on genuine issues of material fact, this Court may affirm summary disposition when the trial court reached the right conclusion, albeit on different grounds. See *Bronson Health Care Group, Inc v State Auto Prop & Cas Ins Co*, 330 Mich App 338, 342 n 3; 948 NW2d 115 (2019) ("We may affirm the trial court when it reached the right result, even if we differ on the reasoning underlying that result.")

As an initial matter, plaintiff's time staying with the Shaws does not meet the *Grange* definition of "domicile" because it was not his permanent home; it was for the "mere special or

---

[4] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority[.]" *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citation omitted).

temporary purpose" of getting his affairs in order and avoiding houselessness. *Grange*, 494 Mich at 493 (quotation marks and citations omitted). Similarly, under the first *Workman* factor, it was not the subjective or declared intent of plaintiff to stay with the Shaws permanently or for an indefinite or unlimited length of time. *Workman*, 404 Mich at 496. Plaintiff testified that Shirley said he could have "a certain amount of time to help me get myself together," and his ultimate "goal" was to move out. Both Jeanine and Shirley understood it to be a temporary arrangement. Moreover, questions of fact exist regarding the amount of time plaintiff was actually staying at the Shaws' home before the date of the collision. Plaintiff initially testified that he lived there for eight months *total*; then he testified that he stayed there for eight months *before* the collision, with a move-in date of January 2021 or February 2021. Conversely, Jeanine and Shirley testified that plaintiff had only been staying in their home for a few days before the collision occurred.

Regarding the second *Workman* factor, the formality or informality of the relationship, *id*., plaintiff was related by blood to the Shaws, he did not pay them rent, or pay for any utilities. Shirley told plaintiff he was welcome to stay so that he would not have to remain at the hotel. The third and fourth *Workman* factors are established because plaintiff resided in the basement of the same home as Jeanine and Shirley, and he had no other place of lodging. *Id*. at 496-497. Immediately before staying with the Shaws, he resided at a hotel, and he did not move out of the Shaws' home until December 2021. Jeanine testified that plaintiff would occasionally spend a night or two away from the home, but would then return. Plaintiff testified that he did not stay elsewhere for long periods of time because of the COVID-19 pandemic.

Turning to the first *Dairyland* factor, questions of fact exist regarding plaintiff's use of the Shaws' Snowden Street address as his mailing address. *Dairyland*, 123 Mich App at 682. Jeanine testified that plaintiff only received mail there *after* the collision and it was from his attorney regarding this case. Plaintiff testified that he received some mail there *before* the collision regarding his Bridge Card and housing applications. Under the next factor, *id*., it was established that plaintiff only brought a bag of clothing with him when he remained at the Shaws' home. As a previously-incarcerated and transient individual, this could have been the entirety of plaintiff's belongings. Plaintiff testified he had no furniture or televisions, and Jeanine was not aware of any other possessions he had. However, Jeanine additionally testified that he only brought a bag of clothing because "he was never going to stay that long."

Relevant to the next *Dairyland* factor, *id*., plaintiff admitted that he did not change the address on his state-issued ID to the Snowden Street address until *after* the collision—on October 22, 2021. Plaintiff asserts that the basement of the Shaws' home was essentially "his domain," in an attempt to meet the next factor—whether a room is maintained in the home for the claimant. *Id*. However, it appears that his sleeping in the basement was a solution for the temporary situation. He slept on the couch, did not have a house key or alarm code, and was never in the home without either Jeanine or Shirley present. Lastly, it was clear that plaintiff was not receiving financial support from the Shaws. *Id*. Although he lived there rent-free and did not have to contribute to utilities, plaintiff and the Shaws all testified that neither Jeanine nor Shirley provided plaintiff with financial support by giving him money.

While it is established law that a person's established domicile continues until a new one is established, *Grange*, 494 Mich at 494, defendant's argument that plaintiff's 2020 apartment in Redford was his domicile at the time of the collision is unpersuasive. He last had a lease for that

apartment in 2020. He stayed in several other locations between losing that apartment and moving in with the Shaws. There was no evidence that he had an active lease for that apartment at the time of the collision in September 2021, or that plaintiff had stayed there since 2020. Thus, defendant's assertion that plaintiff's domicile was in Redford does not support its argument that he was not domiciled with the Shaws.

Ultimately, because genuine issues of fact exist regarding application of these factors to the circumstances at hand, meaning, genuine issues of material fact exist whether plaintiff was domiciled with the Shaws, the trial court properly denied defendant's motion for summary disposition under MCR 2.116(C)(10) of plaintiff's PIP claim.[5] For the same reasons, it was improper for the court to grant plaintiff summary disposition under MCR 2.116(I)(2).[6]

## IV. CONCLUSION

The trial court order regarding summary disposition is affirmed to the extent that it denies defendant summary disposition, and vacated to the extent that it grants plaintiff summary disposition, of plaintiff's PIP claim. This matter is remanded to the trial court for further proceedings consistent with this opinion.

Affirmed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Mariam S. Bazzi

---

[5] Based on this conclusion, we decline to address defendant's assertion that plaintiff's appropriate venue for recovery is through the Michigan Automobile Insurance Placement Facility (MAIPF), because this argument is rendered moot. See *Can IV Packard Square, LLC v Packard Square, LLC*, 328 Mich App 656, 661; 939 NW2d 454 (2019) (generally, this Court does not decide moot issues); see also *Barrow v Detroit Election Comm*, 305 Mich App 649, 659; 854 NW2d 489 (2014) ("An issue is moot if an event has occurred that renders it impossible for the court to grant relief.") (Quotation marks and citation omitted).

[6] Defendant's argument that summary disposition is typically improper in favor of the party bearing the burden of proof on the issue is unpersuasive. Defendant merely relies on unpublished authority providing the general standard of review for motions for summary disposition under MCR 2.116(C)(10). It was not procedurally improper to grant plaintiff summary disposition, as the trial court is explicitly given this authority under MCR 2.116(I)(2). It was improper, however, on the merits.