TIENDA v INTEGON NATIONAL INSURANCE COMPANY

Docket No. 306050. Submitted April 5, 2013, at Lansing. Decided April 23, 2013, at 9:00 a.m. Leave to appeal sought.

Gerardo Lorenzo Tienda and Silvia Lopez Gomez brought an action in the Allegan Circuit Court against Integon National Insurance Company, seeking first-party personal protection insurance (PIP) benefits arising out of an accident that occurred while they were passengers in a vehicle owned and insured by Tienda's uncle, Salvador Lorenzo. Plaintiffs also applied for benefits through the Assigned Claims Facility, which assigned the claim to Titan Insurance Company. Lorenzo was licensed to drive in Michigan, but Integon had issued him an insurance policy at an address in North Carolina, where he and plaintiffs were working as migrant farm laborers. The three had spent several years moving from Florida to North Carolina to Michigan and back depending on which crops were in season, and they generally lived in quarters provided by their employers. At the time of the accident, they were living in an apartment they had rented within a complex located in Grand Rapids that was reserved during the harvest season for migrant farm workers who would be given different apartments upon their return each year. Integon stopped paying no-fault benefits to plaintiffs after taking the position that Lorenzo was a Michigan resident at the time of the accident and, under MCL 500.3163(1), it was only obligated to pay for injuries or property damage that occurred in Michigan if the owner of the vehicle was a resident of another state. The court, Kevin W. Cronin, J., permitted Titan to intervene. Integon filed a cross-claim against Titan, seeking a declaratory judgment that Titan was responsible for paying the PIP benefits and seeking recoupment of the benefits that Integon had already paid. Titan filed a counterclaim against Integon, arguing that Lorenzo was a resident of North Carolina when he bought the policy and at the time of the accident, and that if Lorenzo was a Michigan resident, Integon was on notice of this by virtue of Lorenzo's Michigan driver's license and should therefore be estopped from denying coverage for plaintiffs' injuries. Integon and Titan moved for summary disposition pursuant to MCR 2.116(C)(10). The court denied Integon's motion and granted Titan's motion, ruling that Integon was obligated to pay for

plaintiffs' benefits regardless of Lorenzo's place of residence and that, if Lorenzo's residency was at issue pursuant to MCL 500.3163, Lorenzo was not a Michigan resident but rather a resident of Florida, because he spent more months of the year in that state. The court further ruled that, as innocent third parties, plaintiffs were entitled to benefits under the Integon policy pursuant to the financial responsibility act, MCL 257.501 *et seq.* The court also ordered Integon to pay plaintiffs costs and fees of $21,683.61 as a penalty for its unreasonable refusal to timely pay no-fault benefits. Integon appealed.

The Court of Appeals *held*:

1. The court erred by ruling that Lorenzo's residency was not relevant for purposes of determining whether Integon was obligated to pay plaintiffs' benefits. Integon sells auto insurance in Michigan, and the plain language of MCL 500.3163(1) provides that an insurer authorized to transact automobile liability insurance and personal and property protection insurance in Michigan is subject to Michigan's no-fault system for accidents that arise from the ownership of a vehicle by an out-of-state resident. Given that Titan would be the priority insurer through the Assigned Claims Facility under MCL 500.3172(1) if Lorenzo was a resident of Michigan at the time of the accident, his place of residency was the dispositive question.

2. The court erred by concluding as a matter of law that Lorenzo's residence was in Florida, despite the fact that he spent more months of the year in that state, given that he lived in temporary migrant housing there, he intended to leave in May, he had no documents linking him to Florida, and he maintained no room or possessions there when he left. Although Lorenzo had no intent to remain in Michigan permanently, he had held a Michigan driver's license for several years, intended to stay in Michigan for the foreseeable future, rented an apartment in Michigan that was not provided by his employer, had no other place of lodging, kept no belongings elsewhere, had no other address at which he received mail or other documents, and stated that he lived in Michigan at the time of the accident. Under these unique facts, when the accident occurred, Lorenzo was a resident of Michigan as a matter of law. Accordingly, Titan was the priority insurer responsible for paying plaintiffs' no-fault benefits.

3. The court's order awarding plaintiffs costs and fees under MCL 500.3148 for Integon's failure to pay plaintiffs' no-fault benefits was vacated because a delay is not unreasonable if it is based on a legitimate question of statutory construction, constitutional law, or factual uncertainty. The case was remanded to

determine whether plaintiffs were otherwise entitled to fees or costs from Titan under the court's prior order directing Titan to temporarily pay plaintiffs' no-fault benefits.

Order awarding costs and fees vacated; judgment reversed and case remanded for further proceedings.

*Koning & Jilek, P.C.* (by *James H. Koning* and *Jonathan N. Jilek*), for Gerardo Lorenzo Tienda and Silvia Lopez Gomez.

*Garan Lucow Miller, P.C.* (by *Daniel S. Saylor*), for Integon National Insurance Company.

*Law Offices of Ronald M. Sangster PLLC* (by *Ronald M. Sangster, Jr.*) for Titan Insurance Company.

Before: BOONSTRA, P.J., and SAAD and HOEKSTRA, JJ.

SAAD, J. Defendant Integon National Insurance Company appeals the trial court's order denying its motion for summary disposition and granting summary disposition in favor of intervening defendant Titan Insurance Company. For the reasons set forth below, we reverse and remand.

## I. NATURE OF THE CASE

The answer to the question of which insurer, Integon or Titan, is responsible for personal protection insurance (PIP) benefits arising out of a Michigan automobile accident depends on where the insured, Salvador Lorenzo, resided at the time of the accident. Because of its peculiar facts, this case raises a question of first impression because Lorenzo, an itinerant agricultural worker, did not have a "permanent" residence in any state, but lived, worked, and resided in three different states where he picked fruit on a seasonal basis. At the time of the accident, Lorenzo lived and worked in

Michigan, had all his possessions with him in Michigan, and had no other residence or place he looked to or could be regarded as his home. Accordingly, for purposes of the no-fault act, Lorenzo was a resident of Michigan, and neither his out-of-state policy with Integon nor Integon's choice to also do business in Michigan makes Integon liable for plaintiffs' no-fault benefits. Instead, and contrary to the trial court's ruling, Titan is the insurer responsible for the payment of plaintiffs' PIP benefits as the carrier assigned by the Assigned Claims Facility.

## II. FACTS AND PROCEEDINGS

This case arises out of an auto accident that occurred July 29, 2009, on I-196 in Allegan County. Plaintiffs, Gerardo Tienda and Sylvia Gomez, were passengers in a Ford Expedition owned by Tienda's uncle, Lorenzo. When the accident occurred, Lorenzo was also riding in the vehicle and Heriberto Fernandez Castro was driving. Tienda, Gomez, Lorenzo, and Castro are migrant farm workers who travel from state to state to harvest fruit. From October 2008 until May 2009, the four worked in Florida where they picked strawberries and then pulled the strawberry plants after the harvest. From May 2009 until early July, the four lived together on or near a farm in North Carolina where they harvested blueberries. Around July 4, 2009, Lorenzo drove Tienda, Gomez, and Castro in his Expedition to Michigan, they rented an apartment together in Grand Rapids, and drove together each day to a farm in Allegan County to harvest blueberries. Plaintiffs and Lorenzo testified that, before the accident, they traveled to the same states and performed the same work for many years. Though the four generally lived in housing provided to migrant workers for the harvest

season, they found the Grand Rapids apartment after inquiring about available housing at a Mexican grocery store. It appears the accident occurred after work one day when the four were returning to their Grand Rapids apartment.

Before the accident, on June 22, 2009, Integon issued a North Carolina auto insurance policy to Lorenzo. When he applied for the policy, Lorenzo had a driver's license issued by the state of Michigan. The license showed Lorenzo's address as 66400 84th Avenue, Apartment 3, in Hartford, Michigan. Evidence established that this apartment complex was reserved for migrant farm workers during the harvest season, and that workers who returned to harvest in that area were given different apartments each year within the complex. Lorenzo stated that he received the driver's license approximately eight years before he testified in 2011. However, on the Integon auto insurance application, Lorenzo listed his address as 115 Juan Sanchez Lane in Teachey, North Carolina and, again, it appears this address was temporary housing for migrant farm workers. Integon denied Lorenzo's claim for benefits under its North Carolina insurance policy because, among other reasons, it maintained that Lorenzo was a Michigan resident at the time of the accident, he did not insure the vehicle with Michigan no-fault insurance, and he misrepresented the primary garaging location of the vehicle as his address in North Carolina, when he knew he planned to take the Expedition to Michigan.

Integon initially paid no-fault benefits to Tienda and Gomez, but stopped because it took the position that, at the time of the accident, Lorenzo was a Michigan resident and, under MCL 500.3163(1), Integon was only obligated to pay for injuries or property damage occurring in Michigan if the owner of the vehicle is a resident

of another state. Plaintiffs filed this action against Integon and asserted that Integon must pay first-party PIP benefits, but that Integon refused to pay and unreasonably delayed paying the benefits. Plaintiffs also applied for benefits through the Assigned Claims Facility, which assigned the claim to Titan. See MCL 500.3171 *et seq.* The trial court permitted Titan to intervene in this action on June 14, 2010. Integon filed a cross-claim against Titan, seeking a declaratory judgment that Titan was responsible for PIP benefits owed to plaintiffs and seeking recoupment of the benefits it had already paid to plaintiffs. Titan filed a counterclaim against Integon, and argued that Lorenzo was a resident of North Carolina when he bought the policy and at the time of the accident, and that if Lorenzo was a Michigan resident, Integon was on notice of this by virtue of Lorenzo's Michigan driver's license and, therefore, Integon should be estopped from denying coverage for plaintiffs' injuries.

Integon and Titan moved for summary disposition pursuant to MCR 2.116(C)(10), each claiming that the other company was responsible for paying no-fault benefits to Tienda and Gomez. The trial court ultimately denied Integon's motion and granted Titan's motion. The court first ruled that Lorenzo's place of residence was irrelevant and that Integon was obligated to pay for plaintiffs' injuries, stating that it "cannot endorse a decision in this case that makes the recovery of benefits by [plaintiffs] depend on Mr. Lorenzo's residency." Before ruling, the court remarked that "[e]verybody has to be determined to be a resident of some place . . . ." The court went on to rule that, if Lorenzo's residency was at issue pursuant to MCL 500.3163, Lorenzo was not a Michigan resident because he had no intent to reside in Michigan permanently and he had no greater connection to Michigan than the

other states in which he worked. The court cited the factors set forth in *Workman v DAIIE*, 404 Mich 477; 274 NW2d 373 (1979), and *Dairyland Ins Co v Auto-Owners Ins Co*, 123 Mich App 675; 333 NW2d 322 (1983), and concluded that Lorenzo was a resident of Florida because he spent more months during the year in Florida. Comparing Lorenzo's situation to that of a professional baseball player who travels to other states for games, the court noted that Integon's position that Lorenzo was a Michigan resident would also mean that baseball players change residency each time they stay at a hotel in a different city. The court rejected this notion and further ruled that, as innocent third parties, plaintiffs were entitled to benefits under the Integon policy pursuant to the financial responsibility act, MCL 257.501 *et seq.* The court issued an order denying Integon's motion and granting summary disposition to Titan on April 14, 2011. The court also signed an order on August 23, 2011, that directed Integon to pay plaintiffs costs and fees of $21,683.61 as a penalty for its unreasonable refusal to pay, and its delay in paying, no-fault benefits.

III. DISCUSSION

As this Court explained in *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 291; 778 NW2d 275 (2009):

> This Court reviews de novo a trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion for summary disposition under MCR 2.116(C)(10) is properly granted if no factual dispute exists, thus entitling the moving party to judgment as a matter of law. *Rice v Auto Club Ins Ass'n*, 252 Mich App 25, 30-31; 651 NW2d 188 (2002). In deciding a motion brought under subrule (C)(10), a court considers all the evidence, affidavits, plead-

ings, and admissions in the light most favorable to the nonmoving party. *Id.* We also review de novo issues of contract interpretation. *Rory v Continental Ins Co,* 473 Mich 457, 464; 703 NW2d 23 (2005).

This case also requires us to interpret sections of the no-fault act. Our Supreme Court opined in *Douglas v Allstate Ins Co,* 492 Mich 241, 255-256; 821 NW2d 472 (2012):

> "Issues of statutory interpretation are questions of law that this Court reviews de novo." [*Griffith v State Farm Mut Auto Ins Co,* 472 Mich 521, 525-526; 697 NW2d 895 (2005).] When interpreting a statute, we must "ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute." [*Koontz v Ameritech Servs, Inc,* 466 Mich 304, 312; 645 NW2d 34 (2002).] This requires courts to consider "the plain meaning of the critical word or phrase as well as 'its placement and purpose in the statutory scheme.' " [*Sun Valley Foods Co v Ward,* 460 Mich 230, 237; 596 NW2d 119 (1999), quoting *Bailey v United States,* 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995).] If the statutory language is unambiguous, "the Legislature's intent is clear and judicial construction is neither necessary nor permitted." [*Griffith,* 472 Mich at 526, citing *Koontz,* 466 Mich at 312.]

We hold that the trial court erred when it ruled that Lorenzo's residency is not relevant for purposes of determining Integon's obligation to pay plaintiffs' benefits. While Lorenzo bought a North Carolina auto insurance policy from Integon,[1] Integon also sells auto

---

[1] As noted, Integon denied Lorenzo's claim for benefits, and he did not litigate the matter. As one reason for the denial, Integon cited MCL 500.3113(b), which provides that a person is not entitled to PIP benefits if, at the time of the accident, "[t]he person was the owner or registrant of a motor vehicle . . . involved in the accident with respect to which the security required by [MCL 500.3101] . . . was not in effect." MCL 500.3101(1) provides that a Michigan resident "shall maintain security

insurance in Michigan. Accordingly, Integon filed a certificate of compliance pursuant to MCL 500.3163(1), which provides:

> An insurer authorized to transact automobile liability insurance and personal and property protection insurance in this state shall file and maintain a written certification that any accidental bodily injury or property damage occurring in this state arising from the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle *by an out-of-state resident* who is insured under its automobile liability insurance policies, is subject to the personal and property protection insurance system under this act. [Emphasis added.]

This statute subjects the insurer and insured to "the rights and immunities under the no-fault act for personal and property protection . . . ." *Tevis v Amex Assurance Co*, 283 Mich App 76, 85; 770 NW2d 16 (2009).[2] The plain language of the statute states that Integon is subject to Michigan's no-fault system if the accident arose from, in this case, the ownership of a vehicle by an *"out-of-state resident."* Our Court has held that, if the insured is not a nonresident, MCL 500.3163 has no application and may not be used to impose responsibility for payment of PIP benefits on an out-of-state insurer that maintains a written certification in Michi-

---

for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance." According to Integon, Lorenzo was a Michigan resident, and he did not maintain adequate insurance under the Michigan no-fault act.

[2] The statute also provides that *"claimants* have the rights and benefits of personal and property protection insurance claimants, 'including the right to receive benefits from the electing insurer as if it were an insurer of personal and property protection insurance applicable to the accidental bodily injury or property damage.' " *Tevis*, 283 Mich App at 85, quoting MCL 500.3163(3). Integon grants that plaintiffs are "innocent third parties" and does not argue that they should be denied no-fault benefits, but maintains that Titan is the liable party under Michigan law.

gan. *Farm Bureau Ins Co v Allstate Ins Co*, 233 Mich App 38, 40-41; 592 NW2d 395 (1998). Indeed,

> the only conditions of carrier liability imposed under [MCL 500.3163] are (1) certification of the carrier in Michigan, (2) existence of an automobile liability policy between the nonresident and the certified carrier, and (3) a sufficient causal relationship between the nonresident's injuries and his or her ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle. [*Transport Ins Co v Home Ins Co*, 134 Mich App 645, 651-652; 352 NW2d 701 (1984).]

Thus, the residency of the owner of the vehicle involved in the collision, Lorenzo, is the central, dispositive question in this case. If Lorenzo was a resident of Michigan at the time of the accident, Titan would be the priority insurer through the Assigned Claims Facility, pursuant to MCL 500.3172(1). Therefore, to the extent the trial court based its ruling on the premise that Lorenzo's residency was irrelevant, its holding was erroneous.

The trial court also based its imposition of liability on Integon on the ground that Lorenzo was a resident not of Michigan but of Florida and was, therefore, an out-of-state resident under MCL 500.3163 when the accident occurred.

"Generally, the determination of domicile is a question of fact. However, where . . . the underlying facts are not in dispute, domicile is a question of law for the court." *Fowler v Auto Club Ins Ass'n*, 254 Mich App 362, 364; 656 NW2d 856 (2002). As noted, in its decision from the bench, the trial court cited the factors set forth in *Workman*, 404 Mich at 496-497, and *Dairyland*, 123 Mich App at 682. In *Workman*, our Supreme Court considered whether a passenger injured in an auto accident could recover from her father-in-law's insurance company as a relative "domiciled in the same

household" under MCL 500.3114(1). *Workman*, 404 Mich at 493. The Court first ruled that, for purposes of the no-fault act in Michigan, "the terms 'domicile' and 'residence' are legally synonymous . . . ." *Id.* at 495. See also *Campbell v White*, 22 Mich 178, 197 (1871) (" 'Ordinarily one's residence and domicile (if they do not always mean the same thing) are in fact the same, and where they so concur they are that place which we all mean when we speak of one's home.' ") (Citation omitted.) The *Workman* Court further observed that "[t]he 'legal meaning' of these terms must be viewed flexibly, 'only within the context of the numerous factual settings possible'." *Workman*, 404 Mich at 496, quoting *Montgomery v Hawkeye Security Ins Co*, 52 Mich App 457, 461; 217 NW2d 449 (1974). The *Workman* Court set forth the following nonexhaustive list of factors to determine whether a person resides or is domiciled in an insured's household:

> (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household . . . . [*Workman*, 404 Mich at 496-497 (citations omitted).]

"In considering these factors, no one factor is, in itself, determinative; instead, each factor must be balanced and weighed with the others." *Id.* at 496.

Similarly, in *Dairyland*, this Court considered factors to determine whether a minor child was domiciled with the child's parents for purposes of coverage

under MCL 500.3114. *Dairyland*, 123 Mich App at 678-679. The Court took note of the *Workman* factors, but stated that

> [o]ther relevant indicia of domicile include such factors as whether the claimant continues to use his parents' home as his mailing address, whether he maintains some possessions with his parents, whether he uses his parents' address on his driver's license or other documents, whether a room is maintained for the claimant at the parents' home, and whether the claimant is dependent upon the parents for support. [*Id.* at 682.]

Certainly, the question whether a relative resides in an insured's home differs from the question of an insured's place of residence, but some of the factors cited in *Workman* and *Dairyland* are nonetheless instructive on the issue. We are also mindful of other factual circumstances in which our courts have considered the question of domicile and residency. In *Henry v Henry*, 362 Mich 85, 101-102; 106 NW2d 570 (1960), our Supreme Court employed the United States Supreme Court's formulation of "domicile" as "that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time." (Citations and quotation marks omitted.) Our Supreme Court has also explained that "[r]esidence means the place where one resides; an abode, a dwelling or habitation; especially, a settled or permanent home or domicile. Residence is made up of fact and intention." *Reaume & Silloway, Inc v Tetzlaff*, 315 Mich 95, 99; 23 NW2d 219 (1946) (citation and quotation marks omitted).

> [I]t may safely be asserted that where one has a *home*, as that term is ordinarily used and understood among men, and he habitually resorts to that place for comfort, rest and relaxation from the cares of business, and restoration to

health, and there abides in the intervals when business does not call—that is his residence, both in the common and legal meaning of the term. [*Campbell*, 22 Mich at 197-198 (citation omitted).]

Some published cases address the question of residency under MCL 500.3163 in other factual contexts, but they do not address the question of residency for seasonal agricultural workers. *Farm Bureau v Allstate*, 233 Mich App 38, involved a person insured by Allstate who spent time in both Michigan and Indiana. This Court affirmed the trial court's ruling that the insured was a Michigan resident because facts showed that she

spent a significant amount of time at the Cass County, Michigan, Chain Lakes Road residence, that she frequently slept at this residence, that she received public assistance from the state of Michigan and that the public assistance checks were mailed to the Chain Lakes Road residence, the infrequency of Allstate's insured's stays with relatives in Elkhart, Indiana, and the fact that her children's school had the telephone number of the Chain Lakes Road residence as a number to use to contact Allstate's insured in the case of an emergency. [*Id*. at 40.]

In *Witt v American Family Mut Ins Co*, 219 Mich App 602, 605-606; 557 NW2d 163 (1996), the plaintiff insured his vehicle while living in Iowa and the vehicle was registered in Iowa, but, for purposes of MCL 500.3163, this Court ruled that the plaintiff was a Michigan resident:

Plaintiff moved to this state in 1990, and he has since continuously lived and worked here. Plaintiff has been registered to vote in Michigan since 1990, has maintained bank and checking accounts here, and has a Michigan telephone number. Michigan residency is declared in his state and federal income tax returns, and his employment records describe his residence as Michigan. Plaintiff has a Michigan identification card and used it to obtain a Michigan hunting license as a resident. From 1990 to 1992, he

spent a total of only two weeks in Iowa, visiting during holidays. He owns no property there, has paid no rent to and received no support from his parents since 1990, has no telephone listing there, and with the exception of a student loan bill sent to his parents' home, all his mail since 1990 has gone to a Michigan mailing address. At his deposition, plaintiff stated that, at the time of the accident, he wanted to work as a "rover," but he had no specific plan to move anywhere else until that opportunity arose. While plaintiff still had an Iowa bank account and driver's license, these factors were, on balance, insufficient to create a genuine issue of fact.

There are few published cases in Michigan that address the residency of migrant agricultural workers like Lorenzo and, as noted, none that addresses that issue for purposes of MCL 500.3163. In *Soto v Director of the Mich Dep't of Social Servs*, 73 Mich App 263; 251 NW2d 292 (1977), the Department of Social Services denied the plaintiff's initial application for Aid to Dependent Children (ADC) because the plaintiff was not a resident of Michigan when he applied. *Id.* at 266. The plaintiff had traveled from Texas with his wife and three of his four children to pick fruit at a farm in Berrien County. *Id.* Because of an illness, the plaintiff was unable to continue working on the farm, and the family applied for ADC benefits. *Id.* The plaintiff and his family later decided to establish permanent residence here, and his application for ADC benefits was ultimately granted. *Id.* at 266-267. The plaintiff nevertheless contested the first denial of benefits, but the trial court upheld the decision on the ground that the initial denial was supported by substantial evidence on the whole record. *Id.* at 267, 269. In reviewing the trial court's decision, this Court cited the Michigan Department of Social Services Assistance Payment Manual, which relied on 45 CFR 233.40(a)(1)(2) for the definition of a "resident":

"(1) A resident of a State is one who is living in the State voluntarily with the intention of making his home there and not for a temporary purpose. A child is a resident of the State in which he is living other than on a temporary basis. Residence may not depend upon the reason for which the individual entered the State, except insofar as it may bear upon whether he is there voluntarily or for a 'temporary purpose'.

"(2) Residence is retained until abandoned. Temporary absence from the State, with subsequent returns to the State, or intent to return when the purposes of the absence have been accomplished, does not interrupt continuity of residence." [*Soto*, 73 Mich App at 269, quoting 45 CFR 233.40(a)(1)(2) (1976).]

This Court observed that "[t]his definition also accords with the normal definition of residency used for other purposes in Michigan." *Soto*, 73 Mich App at 269. The Court affirmed the trial court's ruling that, when the plaintiff first applied for ADC benefits, he was not a Michigan resident because he had come to Michigan for the limited purpose of picking fruit during the harvest season, he maintained a home in Texas in which one of his children continued to live, he sent rent money to the landlord in Texas, he kept all of the family's furniture in Texas, he continued to make payments on a lot he was buying in Texas, he lived in temporary migrant housing on the farm in Michigan, he was treated at the migrant clinic, he applied for and received emergency assistance as a migrant, and he received food stamps at the migrant food-stamp office. *Id.* at 270-272. This case, of course, is different because, while the question of residency remains the same, the no-fault law is implicated and, while Lorenzo picked fruit on a seasonal basis, he maintained no other residence when he lived in Michigan and he took all of his worldly belongings with him when he traveled to each of three states to work.

"[I]t has long been the law of this state that '[e]very person must have a domicile somewhere.' " *People v Dowdy*, 489 Mich 373, 385; 802 NW2d 239 (2011), quoting *Beecher v Common Council of Detroit*, 114 Mich 228, 230; 72 NW 206 (1897). As the Court in *Beecher* further opined:

> The domicile is acquired by the combination of residence and the intention to reside in a given place, and can be acquired in no other way. The residence which goes to constitute domicile need not be long in point of time. If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile. [*Beecher*, 114 Mich at 230 (citation omitted).]

Therefore, we cannot simply conclude that, because Lorenzo traveled a circuit of three states throughout the year, he has no domicile or place of residence. Moreover, no evidence was presented to show that Lorenzo had any fixed or permanent home outside the three states in which he worked during the picking seasons. Accordingly, we must consider the evidence presented and determine whether the trial court correctly concluded that, as a matter of law, Lorenzo's residence was in Florida. We hold that the trial court erred in this holding.[3]

---

[3] We note that tens of thousands of migrant workers come to this state each year to harvest crops, and, if they own or operate a motor vehicle in Michigan, they must be aware of, and abide by, the no-fault act. Michigan residents must register their vehicles and maintain adequate insurance under the act, and out-of-state residents must obtain Michigan no-fault coverage if they operate a vehicle in Michigan for more than 30 days in a calendar year pursuant to MCL 500.3102(1). In other words, although not at issue here because Lorenzo had not yet operated the vehicle in Michigan for 30 days when the accident occurred, if he was, indeed, a resident of Florida, it was incumbent on him to maintain no-fault insurance coverage if he did drive the vehicle in Michigan for more than 30 days. Failure to carry no-fault coverage is a misdemeanor under MCL

As discussed, Lorenzo purchased the North Carolina insurance policy while living in housing reserved for migrant workers on or near a farm in North Carolina, and he gave that address when he filled out his application. At the same time, he held, for several years, a driver's license issued by the state of Michigan. In determining his residence, the *Workman* and *Dairyland* factors only partially assist in our analysis. With regard to Lorenzo's intent, when he moved to Grand Rapids in early July 2009, Lorenzo had no intent to remain in Michigan permanently, but intended to make Grand Rapids his home until October. Thereafter, Lorenzo planned to continue, and did continue, to travel the same circuit between Michigan, Florida, and North Carolina, as he had done for several years. With the regularity of the blueberry and grape harvest seasons, Lorenzo stayed in Michigan, and intended to do so for the foreseeable future. *Workman* contemplates the formality of the relationship of the person claiming residence with others in the household and also inquires whether they lived on the same premises but, although Lorenzo traveled to Michigan with plaintiffs, rented an apartment with them, and worked at the same farm, their relationship is immaterial because determining whether Integon or Titan is primarily responsible to pay benefits does not depend on whether the workers shared a common household. Again, however, no evidence showed that Lorenzo had any other place of lodging or any other location at which he kept any belongings or had a room maintained for him.

---

500.3102(2), and a conviction carries a mandatory fine of $200 to $500 and/or imprisonment for up to a year. Thus, for people who travel to Michigan for, as here, three to four months out of each year for agricultural work or other reasons, they must carry no-fault insurance coverage as a matter of law or face criminal penalties.

Viewing the evidence under the *Dairyland* decision, we note that Lorenzo never had a bank account and, while in Michigan, he would cash his checks at a liquor store near the blueberry farm. He did not receive or pay bills at the address in Grand Rapids, but would pay the landlord in cash and used a cellular phone with a prepaid card. However, Lorenzo had no other address at which he received any mail or other documents. Lorenzo cannot read or speak English, so his son either signed the lease or helped him rent the apartment in Grand Rapids with Tienda, Gomez, and Castro. While Lorenzo generally stayed in migrant housing on or near the farms at which he worked—for example, in Teachey, North Carolina; in Dover or Plant City, Florida; and at the address on his driver's license in Hartford, Michigan—the apartment he rented in Grand Rapids was several miles away from the blueberry farm, and evidence showed it was not part of any housing provided by the farm at which he and the others were employed.

The trial court reasoned that Lorenzo's residence was in Florida at the time of the accident because he spent more time there, apparently because the strawberry season was longer and Lorenzo could continue his work there by clearing the fields after the harvest ended. But, under these facts, the duration of time Lorenzo lived in Florida is of little consequence, because he lived in temporary migrant housing there, fully intended to leave in May, had no documents linking him to Florida, and maintained no room or possessions there when he left. Further, although Lorenzo had a Michigan driver's license, he did not have any certification linking him to a Florida address or residency. The same could be said for North Carolina, where Lorenzo applied for auto insurance but lived in temporary

migrant housing and never intended to "garage" his car for purposes of North Carolina policy coverage.

We find inapposite the trial court's comparison of Lorenzo to a professional baseball player who travels for games throughout the season. As noted, the trial court reasoned that, if these migrant workers changed their place of residency each time they moved, professional baseball players would also change residency each time they stayed in a new hotel room while on the road. As Integon points out, professional baseball players maintain permanent homes and do not carry with them all of their possessions when they play away games. We think Integon's analogy is more apt: "[I]f a journeyman ballplayer were traded regularly from one team to another, season after season, and even arriving at a new team's city with a full expectation that, following that season, he will be traded somewhere else, his state of residency undoubtedly would change each time he moved, unless he maintained a permanent home base throughout all the moves -- which the persons involved in the case at bar did not." (Emphasis removed.) Indeed, when Lorenzo or, for that matter, Tienda and Gomez were asked where they would say they lived at the time of the accident, they each responded that they lived in Michigan or that their fixed address was in Michigan. Indeed, they could not have responded otherwise because they had with them all of their worldly possessions and had no other place to call home.

It may appear that, given the nature of Lorenzo's itinerant lifestyle, his ties to Michigan appear as strong or as tenuous as his ties to North Carolina or Florida. However, under these unique facts, and for the reasons stated, we hold that, when the accident occurred on July 29, 2009, Lorenzo was a resident of Michigan as a

matter of law. Accordingly, we hold that the trial court erred when it ruled that Lorenzo was a resident of Florida, and it erred by denying Integon's motion for summary disposition and granting summary disposition to Titan. Because Lorenzo was a Michigan resident when the accident occurred, Titan is the priority insurer responsible for the payment of no-fault benefits to plaintiffs. We also vacate the trial court's order awarding plaintiffs costs and fees under MCL 500.3148 for Integon's failure to pay plaintiffs' no-fault benefits. See *Attard v Citizens Ins Co of America*, 237 Mich App 311, 317; 602 NW2d 633 (1999) (stating that "a delay is not unreasonable if it is based on a legitimate question of statutory construction, constitutional law, or factual uncertainty"). We remand for further proceedings to determine whether plaintiffs are otherwise entitled to fees or costs from Titan under the court's prior order that directed Titan to temporarily pay plaintiffs' no-fault benefits.

Reversed and remanded. We do not retain jurisdiction.

BOONSTRA, P.J., and HOEKSTRA, J., concurred with SAAD, J.