*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SILAS T. MCADOO,

Petitioner-Appellant,

v

CITY OF LUDINGTON,

Respondent-Appellee.

UNPUBLISHED
February 27, 2020

No. 347392
Tax Tribunal
LC No. 17-004120-TT

Before: FORT HOOD, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Petitioner Silas T. McAdoo appeals as of right the Tax Tribunal's order dismissing his appeal from respondent City of Ludington's (City) denial of his claim of entitlement to a property tax exemption pursuant to the Dannie Lee Barnes disabled veteran property tax relief act (Barnes Act), MCL 211.7b. On appeal, McAdoo argues that the Tax Tribunal erred when it determined that he was ineligible because he has been incarcerated since 1995 and did not reside at the property he owns in Ludington, Michigan, during the 2017 tax year. We conclude that the Tax Tribunal did not err in denying McAdoo's disabled veteran's property tax exemption claim and affirm.

## I. RELEVANT FACTS AND PROCEEDINGS

On March 24, 1995, a trial court in Wayne County sentenced defendant to three parolable life sentences for one count of second-degree murder in violation of MCL 750.317 and two counts of assault with intent to commit murder in violation of MCL 750.83. On May 15, 2015, while still incarcerated, defendant married Barbara McAdoo, and she made him a co-owner of her home in Ludington, Michigan on July 22, 2016. In 2016, the Ludington Board of Review denied McAdoo's claim for a disabled veteran's property tax exemption for that tax year on the home. The Board of Review concluded that McAdoo was ineligible because he had never actually lived in the home. It was uncontested that McAdoo otherwise met the requirements for the exemption. McAdoo filed an untimely appeal to the Michigan Tax Tribunal, which was dismissed, and a delayed application

-1-

for leave to appeal to this Court, which this Court denied "for lack of merit in the grounds presented."[1]

In July 2017, McAdoo claimed eligibility for the disabled veteran's property tax exemption for the 2017 tax year.[2] After an evidentiary hearing, an administrative law judge (ALJ) determined that because McAdoo had never occupied the property as his home, he did not qualify for the exemption. The Tax Tribunal agreed and adopted the ALJ's proposed opinion and judgment, holding that "the ALJ correctly concluded that [McAdoo] was not entitled to the requested exemption because he has never occupied the subject property as his homestead or principal residence."

## II. ANALYSIS

## A. STANDARD OF REVIEW

Review of a decision by the [Michigan Tax Tribunal] is very limited. *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 527; 817 NW2d 548 (2012). "In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation." Const 1963, art 6, § 28. "The tribunal's factual findings will not be disturbed as long as they are supported by competent, material, and substantial evidence on the whole record." *Mich Milk Producers Ass'n v Dep't of Treasury*, 242 Mich App 486, 490-491; 618 NW2d 917 (2000). "Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence." *Jones & Laughlin Steel Corp v Warren*, 193 Mich App 348, 352-353; 483 NW2d 416 (1992). "The appellant bears the burden of proof in an appeal from an assessment, decision, or order of the Tax Tribunal." *ANR Pipeline C v Dep't of Treasury*, 266 Mich App 190, 198; 699 NW2d 707 (2005). [*Drew v Cass Co*, 299 Mich App 495, 498-499; 830 NW2d 832 (2013).]

---

[1] *McAdoo v Ludington*, unpublished order of the Court of Appeals, entered on September 27, 2017 (Docket No. 338866). The Michigan Supreme Court denied his application for leave to appeal, *McAdoo v Ludington*, 501 Mich 1061; 910 NW2d 268 (2018), as well as his motion for reconsideration, *McAdoo*, 503 Mich 862; 917 NW2d 370 (2018).

[2] We recognize that McAdoo believes, albeit erroneously, that the initial denial related to both the 2016 and 2017 tax years. It is evident from the record that both the Ludington Board of Review and the Tax Tribunal treated the initial denial as related only to the 2016 tax year and the current appeal as related only to the 2017 tax year.

B. DISCUSSION

The Barnes Act, MCL 211.7b, exempts from the collection of certain real property taxes any disabled veterans (and surviving spouses, if any) discharged from the armed forces of the United States under honorable conditions. The exemption provides in pertinent part:

> (1) *Real property used and owned as a homestead* by a disabled veteran who was discharged from the armed forces of the United States under honorable conditions or by an individual described in subsection (2) *is exempt from the collection of taxes under this act*. To obtain the exemption, an affidavit showing the facts required by this section and a description of the real property shall be filed by the property owner or his or her legal designee with the supervisor or other assessing officer during the period beginning with the tax day for each year and ending at the time of the final adjournment of the local board of review. The affidavit when filed shall be open to inspection. The county treasurer shall cancel taxes subject to collection under this act for any year in which a disabled veteran eligible for the exemption under this section has acquired title to real property exempt under this section. Upon granting the exemption under this section, each local taxing unit shall bear the loss of its portion of the taxes upon which the exemption has been granted. [MCL 211.7b(1) (emphasis added).]

For purposes of this appeal, the parties do not dispute that McAdoo is a "disabled veteran" under the statute and that he co-owned the Ludington property during the 2017 tax year. The sole question on appeal is whether McAdoo satisfied the statutory requirement that he also *used* the property "as a homestead" during the tax year under consideration.[3] It was McAdoo's burden to

---

[3] We reject the City's argument that, applying the principles of res judicata and the law-of-the-case doctrine, this Court's September 27, 2017 decision to deny McAdoo's delayed application for leave to appeal "for lack of merit in the grounds presented" bars McAdoo's current appeal. "The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action." *Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2004). "The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id*. By contrast, this Court has described the law-of-the-case doctrine as "a weak sister of the doctrine of preclusion, which includes the principle of res judicata." See *People v Phillips*, 227 Mich App 28, 34; 575 NW2d 784 (1997).

> The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue. *Driver v Hanley (After Remand)*, 226 Mich App 558, 565; 575 NW2d 31 (1997). Thus, a question of law decided by an appellate court will not be decided differently on remand or in a subsequent appeal in the same case. *Id*. The primary purpose of the doctrine is to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. *Bennett v Bennett*, 197

prove by a preponderance of the evidence that he did so. See *ProMed Healthcare v Kalamazoo*, 249 Mich App 490, 493; 644 NW2d 47 (2002).

We rely on the following fundamental canons of statutory construction to aid our interpretation and application of this statute:

> The judiciary's objective when interpreting a statute is to discern and give effect to the intent of the Legislature. First, the court examines the most reliable evidence of the Legislature's intent, the language of the statute itself. When construing statutory language, [the court] must read the statute as a whole and in its grammatical context, giving each and every word its plain and ordinary meaning unless otherwise defined. Effect must be given to every word, phrase, and clause in a statute, and the court must avoid a construction that would render part of the statute surplusage or nugatory. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Generally, when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion. The courts may not read into the statute a requirement that the Legislature has seen fit to omit. When the Legislature fails to address a concern in the statute with a specific provision, the courts cannot insert a provision simply because it would have been wise of the Legislature to do so to effect the statute's purpose. Statutes that address the same subject matter or share a common purpose are *in pari materia* and must be read collectively as one law, even when there is no reference to one another. [*In re Jajuga Estate*, 312 Mich App 706, 712; 881 NW2d 487 (2015) (quotation marks and citation omitted; alteration in original).]

We must strictly construe tax exemption statutes in favor of the taxing authority. See *Mich United Conservation Club v Lansing Twp*, 423 Mich 661, 664; 378 NW2d 737 (1985).

---

Mich App 497, 499-500; 496 NW2d 353 (1992). [*Ashker ex rel Estate of Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001).]

Despite the obvious similarities and overlap between the two separate Tax Tribunal cases, the law-of-the-case doctrine has no application in the present matter because the current appeal is not part of a single continuing lawsuit. For a similar reason, res judicata also cannot apply because both the underlying factual predicates and sought-after relief in the two separate cases differed, as each case related to McAdoo's conduct during a particular tax year. Furthermore, the question presented to this Court in McAdoo's delayed application for leave to appeal was whether the Tax Tribunal erred by dismissing his case for failure to file a timely appeal of the board of review's decision. Neither the Tax Tribunal nor this Court reached the merits of the question of whether the board of review erred by denying McAdoo's application for a disabled veteran's homestead exemption.

The Barnes Act does not expressly define "homestead." However, under our interpretative canons, "[i]t is the rule that in construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, although enacted at different times, and containing no reference one to the other." See *Bloomfield Twp v Kane*, 302 Mich App 170, 176; 839 NW2d 505 (2013) (quotation marks and citation omitted). The Barnes Act is self-contained within Michigan's general property tax act (GPTA), MCL 211.1 *et seq*. In another statutory provision of the GPTA, the Legislature expressly defined "homestead" as "a dwelling or a unit in a multipurpose or multidwelling building which is subject to ad valorem taxes and which is owned *and occupied as the principal domicile by the owner thereof*." MCL 211.7a(1)(c) (emphasis added).[4]

Construing the statutory language in favor of the taxing authority, we hold that the Legislature unmistakably intended that an otherwise qualifying disabled veteran claiming the disabled veteran's homestead exemption must *actually physically occupy the property as his or her home during the tax year* for which he or she seeks the benefit of the exemption. Applying this definition in this case, the Tax Tribunal did not err in concluding that McAdoo may not rightfully claim this property tax exemption because he did not physically occupy the Ludington property as his home. There is no dispute that McAdoo was never physically present at the property during the 2017 tax year.

We similarly reject McAdoo's related argument that his wife is simply a legal extension of himself. The statutory language belies any such assertion as the disabled veteran himself or herself is unambiguously the object of the express statutory requirement that the real property be "used . . . as a homestead *by a disabled veteran*"—not his or her spouse. See MCL 211.7b(1) (emphasis added). Moreover, the statutory language also provides:

> (2) If a disabled veteran *who is otherwise eligible* for the exemption under this section dies, either before or after the exemption under this section is granted,

---

[4] Although the legislative definition controls, we also note that an occupancy component is consistent with longstanding caselaw. For more than 100 years, it has been the rule that "domicile is acquired by the combination of residence and the intention to reside in a given place, and can be acquired in no other way." See *Tienda v Integon Nat'l Ins Co*, 300 Mich App 605, 620; 834 NW2d 908 (2013), quoting *Beecher v Common Council of Detroit*, 114 Mich 228, 230; 72 NW 206 (1897) (citation omitted). It has also been long-settled that residence "requires both physical presence" and an intent to remain. See *Kar v Nanda*, 291 Mich App 284, 288-289; 805 NW2d 609 (2011), citing *Wright v Genesee Circuit Judge*, 117 Mich 244, 245; 75 NW 465 (1898). In this case, we need not weigh in on whether a disabled veteran who had established a homestead on real property by ownership and occupation as a principal domicile prior to being incarcerated could qualify for the tax exemption for that homestead during his involuntary incarceration, as those circumstances do not exist here. Defendant had not set foot on the subject property at any time prior to or during 2017, so he had never established it as his domicile.

the exemption shall remain available to or shall continue for his or her unremarried surviving spouse. The surviving spouse shall comply with the requirements of subsection (1) and shall indicate on the affidavit that he or she is the surviving spouse of a disabled veteran entitled to the exemption under this section. The exemption shall continue as long as the surviving spouse remains unremarried. [MCL 211.7b(2) (emphasis added).]

Thus, under the unambiguous language of the statute, a surviving spouse may continue to claim, or claim in the first instance, the exemption in a tax year if, *and only if*, the disabled-veteran spouse was "otherwise eligible" before his or her death. This additional provision would be at least partially superfluous under McAdoo's proposed reading. Because McAdoo is both alive and did not physically occupy the property during the 2017 tax year, neither McAdoo nor his wife may properly claim the exemption.[5]

Affirmed.

/s/ Karen M. Fort Hood
/s/ Jane M. Beckering
/s/ Mark T. Boonstra

---

[5] We also briefly address McAdoo's remaining arguments that the Ludington Board of Review or the Tax Tribunal violated his constitutional rights. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority to sustain or reject his position." See *Mitcham v Detroit*, 355 Mich 183, 203; 94 NW2d 388 (1959). Because McAdoo provided no reasoning or factual support in advancement of his remaining claims, we conclude that those claims are abandoned. See *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 626-627; 750 NW2d 228 (2008) (holding that "[a]n argument must be supported by citation to an appropriate authority or policy" and that failure to properly address the merits of an assertion of error constitutes abandonment of the issue).

Even on the merits, we discern no evidence of racial discrimination, nor do we believe that the denial of a tax exemption impaired McAdoo's ability to marry or preserve his family or constituted the failure to recognize his marriage. Likewise, we conclude that the denial did not violate McAdoo's constitutional right to equal protection under the law. McAdoo is correct that the Equal Protection Clauses of the United States and Michigan Constitutions are coextensive and "require[] that persons similarly situated be treated alike." See *Wysocki v Kivi*, 248 Mich App 346, 350-351; 639 NW2d 572 (2001). But "one's status as an incarcerated prisoner does not involve a suspect classification" and there is no equal protection violation if there is a rational basis for treating the incarcerated prisoner differently. See *Proctor v White Lake Twp Police Dep't*, 248 Mich App 457, 469; 639 NW2d 332 (2001). There are obvious reasons for McAdoo's continued confinement. Moreover, it is not self-evident in this case that there was any dissimilar treatment based on McAdoo's status as a prisoner because a physically-disabled veteran who was not incarcerated but still did not physically occupy a property as his or her home during the relevant tax year would similarly be properly denied the benefit of this exemption.