*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HARVEY DONOHUE, Guardian and Conservator
for CD, a legally incapacitated person,

       Plaintiff-Appellee,

and

SPECIAL TREE REHABILITATION SYSTEM and
VHS OF MICHIGAN INC., doing business as
DETROIT MEDICAL CENTER,

       Intervening Plaintiffs,

v

FARMERS INSURANCE EXCHANGE,

       Defendant/Cross-Plaintiff-Appellant,

and

MICHIGAN ASSIGNED CLAIMS PLAN,

       Defendant-Appellee,

and

NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY,

       Defendant/Cross-Defendant-Appellee.

UNPUBLISHED
April 11, 2025
2:18 PM

No. 366513
Wayne Circuit Court
LC No. 21-000072-NF

Before: GADOLA, C.J., and RICK and MARIANI, JJ.

PER CURIAM.

-1-

In this no-fault insurance action, defendant/cross-plaintiff Farmers Insurance Exchange (Farmers) appeals by leave granted[1] three orders: the trial court's February 2, 2023 order granting defendant/cross-defendant Nationwide Mutual Fire Insurance Company's (Nationwide) motion for summary disposition pursuant to MCR 2.116(C)(10); the court's February 9, 2023 order denying Farmers' motion for summary disposition pursuant to MCR 2.116(C)(10); and the court's May 24, 2023 order denying Farmers' motion for reconsideration. We affirm the trial court's order denying Farmers' motion for summary disposition and reverse the trial court's order granting Nationwide's motion for summary disposition.

I. FACTUAL AND PROCEDURAL BACKGROUND

On April 19, 2020, CD, a 27-year-old off-duty police officer, stopped on the side of a highway to rescue a dog that was stranded on the shoulder. While helping the dog, CD was struck by a hit-and-run driver and suffered severe injuries, including a traumatic brain injury. Because of his injuries, CD was placed under the guardianship of his parents, Harvey and Lori Donahue. At the time of the accident, Harvey and Lori had an insurance policy (the policy) with Farmers that, among other things, extended personal protection insurance (PIP) benefits to family members of the insureds who resided in the same household. Harvey, on behalf of CD, initiated a claim with Farmers in the days following the accident.[2] According to Farmers, in connection with the claim, Harvey made several statements to Farmers' claim representative, Michael Santos, indicating that CD had moved from Harvey and Lori's house in West Bloomfield to the home of CD's childhood friend, Zachary Roemer, in Livonia. Farmers maintains that Santos verbally denied the claim based on Harvey's statements and advised Harvey to make a claim with the Michigan Automobile Insurance Placement Facility (MAIPF). Farmers later sent a letter denying coverage on the basis that CD did not reside at the West Bloomfield address. Harvey, on behalf of CD, also applied for benefits from MAIPF. On the application, Harvey listed the Livonia address as CD's "current address" and "address at the time of accident." The claim was assigned to Nationwide, which refused pay benefits on the basis that CD did not reside at the Livonia address.

Harvey, on behalf of CD, filed a complaint alleging breach-of-contract claims against Farmers, Nationwide, and the Michigan Assigned Claims Plan (MACP) for their failure to pay benefits. Harvey argued that CD resided at both the West Bloomfield address and the Livonia address and that there is a question of fact as to where he was domiciled for purposes of determining whether Farmers or Nationwide was required to pay no-fault benefits.

During discovery, Harvey, Lori, and Roemer each testified in depositions about where CD was living at the time of the accident. Lori testified that CD was living at the West Bloomfield address with her and Harvey at the time of the accident. She testified that CD periodically spent the night at friends' houses but that he had a bedroom at the West Bloomfield house and kept the

---

[1] *CD v Farmers Ins Exchange*, unpublished order of the Court of Appeals, entered November 7, 2023 (Docket No. 366513).

[2] Harvey, as CD's co-guardian and conservator, initiated the claim with Farmers and submitted the application to the Michigan Automobile Insurance Placement Facility (MAIPF).

majority of his clothes there. Lori testified that after the accident, the only items of CD's that they retrieved from Roemer's house were a shirt and a pair of pants or shorts. Lori also testified that CD received mail at the West Bloomfield address before and after the accident.

Harvey also testified that CD lived at the West Bloomfield address at the time of the accident, that he had a bedroom there, that he slept there five to six nights a week, and that he received mail there. Harvey testified that CD did not pay rent to him and Lori or receive any major financial assistance from them. Harvey testified that CD did not have a bedroom at Roemer's house and that he did not keep any important items there like a laptop. Harvey also denied ever telling Santos that CD had moved out. Roemer testified that CD slept over at his house in Livonia a couple nights a week, but that he did not live there or receive mail there. Roemer testified that when CD slept over he would stay in the spare room that was furnished with Roemer's bed from college. Roemer also testified that there was no lease agreement between him and CD and that CD did not pay him rent.

Farmers filed a motion pursuant to MCR 2.116(C)(10), arguing that it was entitled to summary disposition because CD was not domiciled with his parents at the time of the accident. In support of its contention that CD lived in Livonia, Farmers pointed to the MAIPF application, CD's January 2020 employment application with the Detroit Police Department, and CD's driver's license and voter registration, each of which listed the Livonia address. Farmers also relied on medical reports and bills received by Farmers after the accident, which also used the Livonia address. Alternatively, Farmers argued that the claim was barred because Harvey, on behalf of CD, committed fraud by listing the Livonia address on the MAIPF application, in conflict with the deposition testimony that CD lived in West Bloomfield.

Nationwide also moved for summary disposition, arguing that the claim was barred because of fraud. According to Nationwide, Harvey, on behalf of CD, committed fraud either by providing false information on the MAIPF application or by testifying falsely in his deposition because CD could not be domiciled at both addresses at the time of the accident. Nationwide argued that it was immaterial whether there was a question of fact regarding which address was CD's domicile because the mere fact that the information provided was conflicting entitled Nationwide to dismissal. Further, Nationwide argued that Farmers was higher in priority to pay CD's benefits because the record indicated that he resided at the West Bloomfield address with his parents at the time of the accident and was covered by the policy.

The trial court denied Farmers' motion for summary disposition after finding that there was a genuine issue of material fact as to where CD was domiciled at the time of the accident. With respect to Nationwide's motion for summary disposition, the trial court noted that CD alleged two inherently contradictory facts: that he lived in Livonia at the time of the accident and that he lived in West Bloomfield at the time of the accident. The trial court granted Nationwide's motion, finding that Harvey "made material misrepresentations in support of his claims for No-Fault benefits in violation of MCL 500.3173a(4)." The trial court denied Farmers' subsequent motions for reconsideration of the two orders on the basis that Farmers did not raise new issues therein or demonstrate that a palpable error occurred. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews the grant or denial of summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Cantina Enterprises II Inc v Property-Owners Ins Co*, ___ Mich App __, ___; ___ NW3d ___ (2024) (Docket No. 363105); slip op at 3. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree." *Green v Pontiac Pub Library*, ___Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363459); slip op at 5. The evidence offered in support of or in opposition to a motion under MCR 2.116(C)(10) is viewed in the light most favorable to the nonmoving party, *Cantina Enterprises*, ___ Mich App at ___; slip op at 3, and "shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion," MCR 2.116(G)(6).

## III. COVERAGE

Farmers argues that the trial court erred by denying its motion for summary disposition because there is no genuine issue of material fact as to where CD was domiciled at the time of the accident. We disagree.

We begin by noting the distinction between the terms "residence" and "domicile." While a person may have more than one residence, they can only have a single domicile at any given point in time. *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 494; 835 NW2d 363 (2013). A "residence" is "any place of abode or dwelling place, however temporary it might have been." *Id*. (cleaned up). Domicile "is acquired by the combination of residence and the intention to reside in a given place," and "[i]f the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile." *Id*. (quotation marks omitted).

CD's entitlement to benefits under the policy turns on where he was residing at the time of the accident. Under the policy, Farmers agreed "to pay in accordance with the Code the benefits to or for an insured person" who suffers bodily injuries. The policy definition of "insured person" includes any "family member," which, under the policy terms, includes any "person who resides with [the insured]" and is related to them by blood, marriage or adoption. And here, there is, at minimum, a question of fact as to whether CD was residing at the West Bloomfield address at the time of the accident. As detailed below, the record contains deposition testimony that supports a finding that CD resided at the West Bloomfield address, including testimony that he lived there with his parents, kept his belongings there, and slept there most nights in a designated bedroom. There is also evidence in the record which supports a finding that CD resided at the Livonia address. For instance, CD listed the Livonia address on his driver's license, employment application, and voter registration. As discussed, the fact that CD may have resided at the Livonia address does not, in itself, mean that he did not also reside at the West Bloomfield address at that same time. Based on the record, there is a genuine issue of material fact as to whether CD resided at the West Bloomfield address, Livonia address, or both. Accordingly, Farmers is not entitled to summary disposition with regard to the question of whether CD was entitled to PIP benefits under the policy.

Farmers argues that, given the phrase in the policy, "in accordance with the Code"—which refers to Chapter 31 of the Michigan Insurance Code—Farmers only agreed to pay benefits to family members of the insured who were *domiciled* in the same household, not those who *resided* at the household. The policy's plain terms, however, demonstrate otherwise. The no-fault act provides that a PIP policy "applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household." MCL 500.3114(1). But a no-fault insurance policy may provide broader coverage than that mandated by the no-fault act, "even with respect to a mandated coverage such as PIP benefits." *Mapp v Progressive Ins Co*, 346 Mich App 575, 594; 13 NW3d 643 (2023). And by expressly defining "insured person" to include family members "resid[ing] with" the insured, the policy at issue here provides broader coverage than required by the no-fault act. See *id*. at 585, 598 (finding that policy which defined "relative" to include any person "residing" with the named insured provided broader coverage than required by MCL 500.3114(1)). We fail to see how the policy's "in accordance with the Code" language would warrant a different conclusion.

But even if CD's domicile at the time of the accident were the relevant inquiry in this case, there is a genuine issue of material fact as to where CD was domiciled at that time. "A domicile determination is generally a question of fact; however, where the underlying material facts are not in dispute, the determination of domicile is a question of law for the circuit court." *Grange*, 494 Mich at 490. When viewing the record in the light most favorable to plaintiff, the contradictory facts demonstrate that reasonable minds could differ over where CD was domiciled when the accident occurred.

The following nonexhaustive list of factors are used to determine where someone is domiciled:

> (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household.
>
> * * *
>
> [O]ther relevant indicia of domicile include such factors as [(5)] whether the claimant continues to use his parents' home as his mailing address, [(6)] whether he maintains some possessions with his parents, [(7)] whether he uses his parents' address on his driver's license or other documents, [(8)] whether a room is maintained for the claimant at the parents' home, and [(9)] whether the claimant is dependent upon the parents for support. [*Tienda v Integon Nat Ins Co*, 300 Mich App 605, 615; 834 NW2d 908 (2013) (quotation marks and citation omitted).]

Each factor is weighed equally with the others and no one factor is determinative. *Id*.

The third, fifth, sixth, and eighth factors weigh in favor of a finding that CD was domiciled at the West Bloomfield address. With regard to the third and eighth factors, the deposition testimony establishes that CD had a designated bedroom at the West Bloomfield address, but not at the Livonia address. And, as to the fifth factor, the deposition testimony demonstrates that CD used the West Bloomfield address as his mailing address for at least some purposes, such as receiving his bank statements. As to the sixth factor, the deposition testimony establishes that CD kept the majority of his possessions at the West Bloomfield address. Additionally, Lori, Harvey, and Roemer all testified that CD lived at the West Bloomfield address.

On the other hand, some factors weigh in favor of a finding that CD was domiciled at the Livonia address. With regard to the seventh factor, CD listed the Livonia address on his driver's license and other documents such as his employment application and voter registration. And with regard to the ninth factor, the evidence supports the conclusion that CD was not dependent on his parents for support at the time of the accident. There is no evidence in the record regarding the first factor—CD's subjective intent. And the second and fourth factors cut both ways: CD did not have a lease agreement regarding either house nor did he pay rent or utilities at either house, and each house constituted an alternative place of lodging as to the other. The contradictory nature of the foregoing evidence demonstrates that there is a genuine issue of material fact as to where CD was domiciled at the time of the accident. *Id*.

Farmers argues that CD was unable to create a genuine issue of material fact regarding his domicile by contradicting the information given in connection with his application to MAIPF. Farmers cites *Aetna Cas & Surety Co v Ralph Wilson Plastics Co*, 202 Mich App 540, 548; 509 NW2d 520 (1993), for the proposition that "[s]ummary disposition cannot be avoided by conclusory assertions that are at odds either with prior sworn testimony of a party or . . . actual historical conduct of a party." But on the MAIPF application, Harvey, on behalf of CD, listed the Livonia address as CD's "current address" and CD's "address at the time of accident." The form did not require CD to make a representation as to his domicile. Though CD later alleged that he was a resident of West Bloomfield at the time of the accident, that did not necessarily contradict his prior representation that he resided in Livonia because an individual can have multiple residences. *Mapp*, 346 Mich App at 595. Accordingly, the trial court did not err by denying Farmers' motion for summary disposition.

## IV. FRAUD

Farmers also argues that CD's claim should have been dismissed because he committed fraud by misrepresenting where he lived. MCL 500.4503 provides the general standard for insurance fraud:

> A fraudulent insurance act includes, but is not limited to, acts or omissions committed by any person who knowingly, and with an intent to injure, defraud, or deceive:

> \* \* \*

> (c) Presents or causes to be presented to or by any insurer, any oral or written statement including computer-generated information as part of, or in support of, a

-6-

claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains false information concerning any fact or thing material to the claim.

Farmers' argument, again, turns on the assertion that false information was provided about where CD was living at the time of the accident. But, as discussed, there are genuine issues of material fact regarding where CD was domiciled and whether he resided at the West Bloomfield address, the Livonia address, or both. Given the circumstances and record in this case, the fact that multiple addresses were provided for CD in the course of seeking benefits does not, standing alone, conclusively establish that false information was presented in pursuit of the insurance claims at issue.

Farmers argues that the alleged fraud is proven by the notes compiled by Santos regarding a conversation he had with Harvey after the claim was initiated, indicating that Harvey told Santos that CD moved from the West Bloomfield address to the Livonia address in January 2020. The parties dispute whether Harvey's alleged statement to Santos is admissible. We need not address the admissibility of the evidence, however, because even if Harvey's statement were admissible, it would not demonstrate as a matter of law that he committed fraud. Harvey's general observation that CD "moved out" in January 2020 does not necessarily contradict or foreclose the possibility that CD also continued to maintain a residence, or even his domicile, at the West Bloomfield address. The statement could be taken to provide evidence that CD did not, but it also could be understood as compatible with the evidence that he did. Viewing the evidence in the light most favorable to the nonmoving party, a genuine issue of material fact exists regarding where CD resided and where he was domiciled at the time of the accident, and, by extension, whether fraud was committed.

For the same reasons, however, we agree with Farmers that the trial court erred by granting Nationwide's motion for summary disposition on the basis that fraud was committed. The standard for showing fraud made in connection with a claim submitted to the MAIPF differs in some ways from the general standard discussed above. See *Candler v Farm Bureau Mut Ins Co of Michigan*, 321 Mich App 772, 779-780; 910 NW2d 666 (2017).[3] Both standards, however, require a showing that false information was submitted.

The trial court found that Harvey, on behalf of CD, provided inherently contradictory information regarding where CD was living at the time of the accident. The court reasoned that one of the representations must be false because it was impossible for CD to have two domiciles,

---

[3] In *Candler*, 321 Mich App at 779-780, this Court explained that:

> [A] person commits a fraudulent insurance act under [MCL 500.3173a(4)] when (1) the person presents or causes to be presented an oral or written statement, (2) the statement is part of or in support of a claim for no-fault benefits, and (3) the claim for benefits was submitted to the MAIPF. Further, (4) the person must have known that the statement contained false information, and (5) the statement concerned a fact or thing material to the claim. [(Footnote omitted).]

-7-

and therefore one of the representations must constitute fraud. But, as discussed, the representations at issue did not purport to speak specifically to domicile, and because CD could have had more than one residence, the information provided was not necessarily contradictory. Accordingly, the trial court erred by finding that Nationwide was entitled to judgment as a matter of law on the basis of fraud.

## V. CONCLUSION

There is a genuine issue of material fact as to where CD was residing at the time of the accident and as to whether he had more than once residence at that time. There is also a genuine issue of material fact as to where CD was domiciled. Farmers is not entitled to judgment as a matter of law because resolution of these fact questions is necessary in order to determine whether CD was entitled to the claimed PIP benefits under the policy and whether Harvey, on behalf of CD, committed fraud in connection with his claims. Accordingly, the trial court properly denied Farmers' motion for summary disposition. The trial court erred, however, by granting Nationwide's motion for summary disposition because the same fact questions foreclose a finding that fraud was committed as a matter of law in connection with the MAIPF application. We therefore affirm the trial court's order denying Farmer's motion for summary disposition and reverse the trial court's order granting Nationwide's motion for summary disposition.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Philip P. Mariani