*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KYLE MCGRATH, a Legally Incapacitated Person,
by his Guardian, MICHAEL MCGRATH,

       Plaintiff-Appellee,

and

RAINBOW REHABILITATION,

       Intervening Plaintiff-Appellee,

v

MEEMIC INSURANCE COMPANY,

       Defendant,

and

ZURICH AMERICAN INSURANCE
COMPANY,

       Defendant-Appellant.

UNPUBLISHED
October 19, 2023

No.   362539
Wayne Circuit Court
LC No.   16-009739-NF

KYLE MCGRATH, a Legally Incapacitated Person,
by his Guardian, MICHAEL MCGRATH,

       Plaintiff-Appellee,

and

RAINBOW REHABILITATION,

       Intervening Plaintiff-Appellee,

-1-

v                                                    No. 362631
                                                     Wayne Circuit Court
MEEMIC INSURANCE COMPANY,                             LC No. 16-009739-NF

                    Defendant-Appellant,
and

ZURICH AMERICAN INSURANCE
COMPANY,

                    Defendant.

_____

Before: BOONSTRA, P.J., and BORRELLO and FEENEY, JJ.

PER CURIAM.

        In these consolidated cases, defendants, Meemic Insurance Company and Zurich American Insurance Company, appeal by right the trial court's order, following a jury trial, denying their motion for judgment notwithstanding the verdict. Defendants also appeal the trial court's earlier orders denying their motions for summary disposition and directed verdict. For the reasons set forth in this opinion, we affirm.

                                I. BACKGROUND

        Prior to June of 2015, Kyle McGrath lived exclusively with his parents at their home on Kirkshire Avenue, in Beverly Hills, Michigan, while he worked part-time and attended classes. In June 2015, about a month after he obtained a full-time job utilizing his training in computer-aided design, Kyle leased an apartment about 5 miles from the Kirkshire address. Kyle kept belongings, and spent time, at both his apartment and the Kirkshire address. On February 23, 2016, while the family was in Portland, Oregon attending the wedding of Kyle's oldest sister, Kyle was struck by a vehicle while crossing a street. Kyle sustained serious injuries, and remained in a coma for several weeks in Portland, until transported by air ambulance to Beaumont-Taylor's brain trauma unit, where Kyle remained from April until June, and then worked with intervening plaintiff Rainbow Rehabilitation while inpatient until December 2016, when he went home to the Kirkshire address. Michael, who had been appointed as Kyle's guardian, testified that Kyle continued to require a caretaker at home and was unable to testify, but had regained some cognitive functioning and was able to use a wheelchair. This dispute arose because the providers of Michael's motor vehicle insurance, Meemic and Zurich, asserted that Kyle was not domiciled at Michael's Kirkshire home and thus not covered under Michael's policies.

        Prior to trial, the parties entered into an agreement whereby the issue of domicile would be tried in the circuit court before a jury and in the event of a favorable ruling for plaintiff the issue of damages would be decided by an arbitrator. That agreement, in relevant part, states:

                                      -2-

WHEREAS, the parties desire to avoid the costly and cumbersome procedures of the court system on the issue of damages, and the parties desire to submit only the issue of Kyle McGrath's domicile to a trier of fact, that being a jury, with the understanding and agreement that if:

* * *

b. Kyle McGrath is determined by the jury have domiciled on February 23, 2016, at 16925 Kirkshire Ave, Troy, Michigan, the issue of damages will be submitted to a binding arbitration, subject to a separate arbitration agreement, following an exhaustion of all applicable appeals, subject to paragraph c, and if;

c. a party files a claim of appeal, a final appellate decision by either the Court of Appeals or Michigan Supreme Court, will be binding on all parties and determinative if it is necessary that the parties proceed to arbitration on damages; and

WHEREAS, either result determined by the jury will be a full, final and complete resolution of any and all claims for No-Fault benefits for the subject motor vehicle accident, subject to paragraph to c, which limitation shall not be disclosed to the jury . . . .

Prior to trial, defendants brought a motion for summary disposition arguing that 27-year-old Kyle was not a resident relative of Michael's home at the time of the accident because he had achieved a full-time job, moved out of his parents' home, and had a signed lease elsewhere, putting the utilities for his apartment in his name, and had been living at the apartment for 9 months, while only visiting his parents three times, before the subject motor vehicle accident occurred. Plaintiffs argued against summary disposition on the grounds that Kyle's family claimed that the apartment was merely a test for Kyle to see if he was ready to live independent of his family. Additionally, plaintiffs argued, Kyle's driver's license and work mail continued to recognize his parents' home, where he also retained a bedroom, and paid his parents $200 a month for food and other incidentals.

The trial court denied the motions for summary disposition finding questions of material fact existed as to Kyle's domicile. During trial, defendants moved for a directed verdict which was similarly denied by the trial court. The jury returned a verdict in favor of plaintiffs finding that Kyle was domiciled at the Kirkshire Ave address of his parents. After the verdict was returned, defendants moved for judgment notwithstanding the verdict (JNOV) which was denied by the trial court. This appeal ensued.

## II. ANALYSIS

Initially we take up the issue raised by plaintiffs who argue that appellate challenges to the jury's finding regarding Kyle's domicile are prohibited by the parties' trial agreement. If plaintiffs are correct, this Court is precluded from giving defendants' arguments plenary review. Plaintiffs argue that defendants are limited to "applicable appeals," and that an appeal regarding domicile was not applicable because the agreement provided that the issue of Kyle's domicile was to be resolved by the jury. Plaintiffs further state that the parties stated their intention that the jury decide only the issue of Kyle's domicile, and that a result in plaintiffs favor would result in binding

arbitration to determine damages "following an exhaustion of all applicable appeals, subject to paragraph c." Paragraph C states: "…a party files a claim of appeal, a final appellate decision by either the Court of Appeals or Michigan Supreme Court, will be binding on all parties and determinative if it is necessary that the parties proceed to arbitration on damages…" Hence, the clear language of the trial agreement specifically recognized the right of a party to appeal whatever verdict was reached by the jury. Accordingly, as an initial matter, we conclude that the trial agreement recognized the right of any party to take an appeal of the jury's verdict relative to the issue of domicile. Defendants are therefore entitled to plenary review of their arguments.

### III. SUMMARY DISPOSITION

When deciding a motion for summary disposition under MCR 2.116(C)(10), the trial court must examine the substantively admissible evidence actually proffered by the parties; it may not deny a properly supported motion on the nonmoving party's promise to provide evidence. See *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999). The court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence submitted in the light most favorable to the nonmoving party. See MCR 2.116(G)(5); *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). It must draw all reasonable inferences in favor of the nonmoving party. See *Dextrom v Wexford Co*, 287 Mich App 406, 415-416; 789 NW2d 211 (2010). The court may not make findings of fact or weigh credibility in deciding a motion for summary disposition. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994); *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018).

This Court reviews de novo a trial court's decision whether to grant a motion for summary disposition. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo whether the trial court properly selected, interpreted, and applied the court rules applicable to the motion for summary disposition. See *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012). When reviewing a motion brought under MCR 2.116(C)(10), the court considers the affidavits, depositions, pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Rose v Nat'l Auction Group, Inc,* 466 Mich 453, 461; 646 NW2d 455 (2002). Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Here, examination of the record evidence presented to the trial court prior to trial leads us to conclude that the trial court properly fulfilled its role when denying defendants' motions for summary disposition under MCR 2.116(C)(10).

In *Grange Ins. Co. of Mich. v. Lawrence*, 494 Mich 475, 494; 835 NW2d 363 (2013), our Supreme Court noted that while a person may have more than one residence, "a person may have one—and only one—domicile." "A domicile determination is generally a question of fact; however, where the underlying material facts are not in dispute, the determination of domicile is a question of law for the circuit court." *Id*. at 490. See also, *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 543; 965 NW2d 121 (2020). "Domicile" is " 'that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time.' " *Tienda v Integon Nat'l Ins Co*, 300 Mich App 605, 616; 834 NW2d 908 (2013), quoting *Henry v*

*Henry*, 362 Mich 85, 101-102; 106 NW2d 570 (1960).

To determine a person's domicile, a number of factors are weighed and balanced against each other, and no one factor is determinative. *Univ of Mich Regents v State Farm Mut Ins Co,* 250 Mich App 719, 730; 650 NW2d 129 (2002). It is error to give any one factor special weight. *Cervantes v Farm Bureau Ins Co*, 272 Mich App 410, 415-416; 726 NW2d 73 (2006). In *Workman v DAIIE,* 404 Mich 477, 496-497; 274 NW2d 373 (1979), our Supreme Court described relevant factors in deciding whether a person is domiciled in the same household as the insured:

> (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household. [Citations and footnote omitted.]

The factors of this "nonexhaustive list" are considered "flexibly," and " 'within the context of the numerous factual settings possible.' " *Tienda*, 300 Mich App at 615, quoting *Workman,* 404 Mich at 496.

In *Dairyland Ins Co v Auto-Owners Ins Co*, 123 Mich App 675, 681-682; 333 NW2d 322 (1983)*,* this Court addressed the particular challenges presented by young persons transitioning into independence, and formulated additional factors to be considered. *Id.* at 681-682. In *Fowler v Auto Club Ins Ass'n*, 254 Mich App 362, 364-365; 656 NW2d 856 (2002), citing *Dairyland*, 123 Mich App at 682, this Court enumerated the additional *Dairyland* factors as follows:

> (1) whether the child continues to use the parents' home as the child's mailing address, (2) whether the child maintains some possessions with the parents, (3) whether the child uses the parents' address on the child's driver's license or other documents, (4) whether a room is maintained for the child at the parents' home, and (5) whether the child is dependent upon the parents for support.

Here, deposition testimony presented to the trial court in support of and against defendants' motions for summary disposition established that Kyle had an apartment after he obtained full-time employment, moved some belongings into the apartment, for which he paid the rent, paid for and consumed utility services there, and regularly socialized with his girlfriend at the apartment. But, in denying defendants' motions for summary disposition, the trial court noted the considerable evidence of Kyle's continuing ties to the Kirkshire address, including a room, possessions, time spent, and Michael's testimony that Kyle was using the apartment merely for social gatherings. When Meemic's counsel remarked that "[e]very single thing that characterized his parents' home was characterized by his apartment," the trial court replied, "So how do I make a decision?" The trial court concluded, "[W]ho are you to say or me to say what was my domicile. I mean I think it's for a Jury to decide, I can't say."

Inquiry into a person's domicile calls for consideration of "all the facts and circumstances taken together." *Grange Ins Co*, 494 Mich at 492. However, the *Workman* factors left "the question of intent a preeminent concern in determining an adult's domicile." *Id.* at 502. Here, Kyle's father provided extensive testimony indicating that Kyle's intent in moving to the apartment was not to reside there indefinitely. Rather, Michael described Kyle as tentative in asserting his independence even after acquiring the apartment. Michael stated that Kyle reserved the option of living at the parental home, and actively stayed there, while evaluating his desire, or ability, to establish a permanent residence for himself. He described Kyle as using the apartment in furtherance of his social agenda, rather than to live permanently on his own. Despite Kyle's actions of obtaining, utilizing, and maintaining an independent residence, this testimony was significant evidence that Kyle did not intend to reside at the apartment indefinitely. Michael added that Kyle gave him approximately $200 a month for food and other expenses in connection with the Kirkshire address. Michael's testimony was relevant to the determination of Kyle's domicile, particularly given Kyle's inability to provide testimony. Therefore, there were genuine issues of material fact with regard to the first *Workman* factor.

The second factor, the "formality or informality of the relationship between the person and the members of the insured's household," favored plaintiffs' position. Defendants do not dispute that there were informal family relationships between Kyle and his parents, such that he was free to use his parents' home at will. He took advantage of the familial relationship for low-cost,[1] housing, including utilities, food, and storage.

The third *Workman* factor, whether Kyle lived in the same house as Michael, presented a myriad of unresolved material facts such as how often Kyle stayed in each residence, the degree to which each residence had furnishings and what type of furnishings--- to name but a few. The evidence presented to the trial court on these and other issues was not entirely consistent. And the fourth factor favored defendants, because Kyle had rented a place of lodging apart from the Kirkshire address.

The additional *Dairyland* factors seem to favor plaintiffs' position, but nonetheless still leave a genuine issue of material fact, because the testimony indicated that Kyle maintained possessions and a bedroom, and received mail and packages, paid some rent to his father at the Kirkshire address, but was also paying for, and using, his own apartment. Therefore, the trial court did not err by denying defendants' motions for summary disposition as genuine issues of material fact existed at the time defendants moved for summary disposition. *Rose*, 466 Mich at 461.

Zurich argues that the trial court should have decided the issue of domicile because none of the facts, just the conclusions based on the facts, were in dispute. As previously stated: ' "A domicile determination is generally a question of fact; however, where the underlying material facts are not in dispute, the determination of domicile is a question of law for the circuit court.' " *Barnes*, 334 Mich App at 543, quoting *Grange*, 494 Mich at 490. During the hearing on the motions for summary disposition, there were disagreements regarding the amount of possessions at each address, what mail was received at each, and the amount of time Kyle spent at each.

---

[1] Presuming that the $200 per month collected from Kyle did not cover all of the costs incurred as a result of Kyle living at the Kirkshire address.

Additionally, as previously indicated, Kyle was paying rent to his father as well as for his apartment. Kyle had indicated to his brother Grant that he planned to move to Seattle in the near future and family members testified to the sparseness of his apartment and the numerous occasions in which they found and visited with Kyle at the Kirkshire address. On this record, we conclude that the trial court did not err in finding numerous factual disputes regarding where Kyle was domiciled. Accordingly, defendants are not entitled to relief on this issue.

## IV. DIRECTED VERDICT OR JUDGMENT NOTWITHSTANDING THE VERDICT

This Court reviews de novo a trial court's decision on a motion for a directed verdict. *Smith v Foerster-Bolser Const, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). A trial court's decision on a motion for judgment notwithstanding the verdict (JNOV) is likewise reviewed de novo. *Prime Fin Servs, LLC v Vinton*, 279 Mich App 245, 256; 761 NW2d 694 (2008).

"A directed verdict is appropriate only when no factual question exists on which reasonable jurors could differ." *Smith*, 269 Mich App at 427-428. Because a trial court "may not substitute its judgment for that of the jury," a motion for a directed verdict must be denied where jurors "could honestly have reached different conclusions." *Dep't of Transp v McNabb*, 204 Mich App 674, 675-676; 516 NW2d 83 (1994).

"A judgment notwithstanding the verdict is proper where insufficient evidence is presented to create an issue for the jury," and is "improper where reasonable minds could differ on issues of fact." *Clemens*, 200 Mich App at 461 (quotation marks and citation omitted). While considering either a motion for a directed verdict or JNOV, the trial court must review the testimony in the light most favorable to the nonmoving party. *Clemens v Lesnek*, 200 Mich App 456, 461; 505 NW2d 283 (1993).

Defendants argue that the trial court erred by denying their motions for a directed verdict and JNOV because the evidence did not support that Kyle was domiciled at the Kirkshire address. In response to their arguments, the trial court explained as follows:

> But at the end of the day the Court, I mean shorthand I'm not going to act as a 9th juror, as a 13th juror, the jurors have spoken and the Court is going to respect that decision. The Court stands by this Court's conclusion that the facts were in dispute and that intent was properly a function of the jury to arrive at a decision based upon those disputed facts.

The testimony of Kyle's family members during the jury trial was substantial and consistent in providing evidence that Kyle remained domiciled at the Kirkshire address, and that his intent in moving to the apartment was not to make it his permanent home. Michael testified that Kyle "wanted to try to go out on his own again, he'd done it a couple other times, it was unsuccessful." Michael testified that he informed Kyle that Kyle was welcome to try, while retaining his presence at the Kirkshire address, and opined that Kyle was slow to become fully independent. As indicated *supra*, Michael, Kyle's mother, and Kyle's siblings all testified about the significant time that Kyle continued to spend at the Kirkshire address. Kyle's mother testified that Kyle was at the Kirkshire address so often that she thought he kept his home there, and

maintained the apartment as a private place to socialize. Kyle's brother testified that it was Kyle's intent to move to Seattle, as their sister had, in pursuit of a career.

Similar to our discussion regarding summary disposition, the *Workman* factor concerning the formality of the relationship between the injured person and the members of the insured's household favored plaintiffs' position. As stated, because of those informal family relationships between Kyle and his parents, Kyle was free to use his parents' home at will. The evidence pertaining to whether Kyle lived in the same house as Michael was mixed, because there was evidence that he stayed in each residence. The factor concerning the existence of another place of lodging favored defendants because Kyle had rented an apartment and cell phone records indicated he spent the most time there.

The additional *Dairyland* factors also provided evidence that a juror could rely on to determine that Kyle's domicile was at the Kirkshire address. Testimony indicated that Kyle maintained a bedroom and many possessions at the Kirkshire address, while also furnishing his apartment with only basics. He received mail and packages at the Kirkshire address, and his driver's license listed that address, where his mother also did his laundry. Although Kyle was paying for his own apartment, he also paid Michael a monthly amount to cover costs at the Kirkshire address.

For the reasons stated *supra*, we conclude that the evidence, including inferences that could legitimately arise from it, when viewed in a light most favorable to plaintiffs, was sufficient to support the determination that Kyle's domicile was at Kirkshire. *Smith*, 269 Mich App at 427-428; *Dep't of Transp* 204 Mich App at 675-676. Thus, the trial court did not err by denying defendants' motions for a directed verdict or JNOV. *Id.*

Affirmed. Plaintiffs, having prevailed, are entitled to costs. MCR 7.219(A).

/s/ Mark T. Boonstra
/s/ Stephen L. Borrello
/s/ Kathleen A. Feeney